**In re HBG SERVICENTER, INC., Debtor.**

**In re Robert WALSH and Geraldine Walsh, Debtors.**

**Robert WALSH and Geraldine Walsh, Plaintiffs**

**v.**

**Robert ABRAMS, Attorney General of the State of New York, Defendant.**

**Bankruptcy No. 184–41576/77–21. Adv. No. 184–0152.**

United States Bankruptcy Court, E.D. New York.

Jan. 11, 1985.

Robert J. Abrams, Atty. Gen., of N.Y., New York City, for defendant.

Corash & Hollender, Staten Island, N.Y., for debtors and plaintiffs.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

The defendant herein, Robert Abrams, Attorney General of the State of New York, is moving to dismiss this adversary proceeding which seeks to enjoin him from

continuing to prosecute the individual debtors, Robert and Geraldine Walsh, for sales tax violations. The Attorney General also asks that the relief requested be denied.

The debtors' complaint alleges that the relief requested in this adversary proceeding is needed to prevent the debtors' gas station business from closing down due to the continued criminal prosecution. The debtors, who have filed under Chapter 11 of Title 11, contend that they intend to propose a plan of reorganization which will call for the payment of all tax obligations and which "will fully take the place of any restitution which would be ordered in criminal proceedings." Complaint, par. 5. A preliminary and permanent injunction is requested.

The Attorney General predicates his motion on the grounds that upon the facts and the law plaintiffs have no right to relief and also that the Court lacks jurisdiction. His memorandum invokes the doctrine of sovereign immunity.

Affidavits, affirmations and memoranda in support of, and in opposition to, the Attorney General's motion have been received from both sides. From these documents it appears that both parties are willing to have the Court dispose of the matter on the papers now before it.

For purposes of the present motion, this Court will accept as true the facts alleged by the debtors and in particular by Richard A. LaRosa, the attorney for the debtors, who has been representing them since the commencement of the criminal prosecution which they now seek to enjoin.

The debtors are currently the sole owners of HBG Servicenter, Inc., which operates two gas stations in Staten Island. (HBG Servicenter, Inc. has also filed for relief under Chapter 11 of Title 11). The accountant the debtors used, George Green, was the man originally employed by Harold Stevenson who brought the debtors into the gas station business and whom they eventually bought out.

In 1983 Green and the Walshes were indicted under New York's Penal Law for "Grand Larceny" and "Offering a False Instrument for Filing." The indictment was based on the failure to pay sales taxes. Their attorney moved to dismiss the indictments on the ground that "there exists a jurisdictional and/or legal impediment to conviction of the defendants." Ex. 1 to Affidavits of Richard A. LaRosa, dated Nov. 26, 1984 ("Aff. 11/26/84"). His argument was based upon Section 1145(b) of the Tax Law which, it was argued, barred a prosecution under the Penal Law. The motion was denied.

Plea bargaining followed. According to the debtors' attorney: "Each and every conference with the Court and all negotiations with the Assistant Attorney General revolved around the issue of restitution. Restitution in the sum of $250,000 was discussed but it was clearly understood that the amount was to be determined by the Department of Taxes and Finance." Aff. 11/26/84 at 2.

On September 19, 1983, the debtors withdrew their plea of not guilty. Ex. 2 to Aff. 11/26/84. Robert Walsh pleaded guilty to offering a false instrument for filing in the first degree, a Class E felony; Geraldine Walsh offered a plea of guilty to Attempted offering of a false instrument for filing in the first degree, a Class A misdemeanor, in full satisfaction of the pending indictment.

When the prosecuting attorney was asked his recommendations as to sentencing, he responded:

"As to the defendant Robert Walsh, the People will recommend, at the time of sentence, that the defendant be incarcerated for a period of time.

As to the defendant Geraldine Walsh, the People will rely on the discretion of the Court as well as the pre-sentence report compiled by the Department of Probation."

Transcript of September 19, 1983, in Criminal Term, Part I of Supreme Court, State of New York, County of Richmond, Exhibit 2 to Aff. dated November 26, 1984 (hereinafter "TR").

The Court, after ascertaining that the Walshes understood their pleas, put the following questions to Mr. Walsh:

THE COURT: Now, were any promises made to you, Mr. Walsh, to induce you to plead guilty except the Court stated that in the event you made full restitution of an amount to be determined by the appropriate authorities of the State of New York, it is the Court's understanding at this point there is a dispute as to what the true amount that is owed under the taxes are.

Is that correct?

MR. LA ROSA: That is correct.

THE COURT: Is that correct, Mr. Kosloff?

MR. KOSLOFF: That is right.

THE COURT: And there are procedures pending now which should determine that amount; is that right?

MR. KOSLOFF: That is true.

THE COURT: Now, once that determination is made, it is the understanding of this Court that in the event you make full restitution of that amount—I have no idea of what that may be. It would probably run into six figures—that then the Court stated that it would take that into consideration and would sentence you to a period of probation of five years. And, also, I will impose a fine.

Do you understand that?

THE DEFENDANT R. WALSH: Yes.

THE COURT: The amount of the fine also to be determined at the time of sentence. TR at 9–10.

The Judge then turned to Mrs. Walsh, saying:

THE COURT: Now, with respect to you, Mrs. Walsh, did anybody make any promises to induce you to plead guilty except the Court said it would be guided by the Probation report and no jail sentence would be imposed in your case.

Do you understand that?

THE DEFENDANT G. WALSH: Yes.

THE COURT: Anybody make any other promises to you?

THE DEFENDANT G. WALSH: No. TR. at 10–11.

Before the hearing terminated, Mr. LaRosa put on the record the following statement: "... the plea by the defendants is—to count 9 is in no way an admission of the amount of sales tax that the State has assessed as of this time; that there is presently a proceeding pending; that the final amount of restitution to be paid by the defendants, Mr. and Mrs. Walsh, will be based upon an agreement that they reach with the State or by a judicial determination made by the Courts of this State." TR at 12–13. The Court replied "Okay." *Ibid.*

Evidently no agreement was reached as to the amount to be repaid because, according to the debtors' attorney, the Department of Taxation and Finance is demanding repayment of the sales taxes, plus interest and fraud penalties, bringing the total amount to approximately $900,000, whereas the debtors claim that the negotiated plea was solely for restitution of the unpaid sales taxes, approximating $250,000.

While this dispute was pending the New York Court of Appeals in *People v. Valenza*, 60 N.Y.2d 363, 469 N.Y.S.2d 642, 457 N.E.2d 748 (1983) dismissed similar indictments for unpaid sales taxes brought under the Penal Law on the ground that prosecution should have been under the Tax Law. Thereupon the Walshes' attorney filed a motion for reargument and reconsideration of his previous motion which the New York Supreme Court acted on favorably, dismissing the indictments against Robert Walsh and Geraldine Walsh. An appeal has been taken by the Attorney General from this dismissal. That appeal is now pending in the Appellate Division, Second Department. It is the continued prosecution of this appeal and of the criminal proceeding itself which the Walshes seek to enjoin.

In essence their argument is that the sole purpose of the criminal proceeding, as shown by its history, is restitution of the unpaid sales tax and that the debtors should be allowed the opportunity to repay

this debt through the bankruptcy courts. The Attorney General vigorously denies that all he is seeking is restitution. However, because of the view this Court takes of the law it is not necessary to resolve this conflict in the facts. For purposes of the present motion it will be assumed that neither debtor will be incarcerated if restitution of the amount determined to be due is made so that, broadly speaking, restitution will be the end result of the pending criminal proceeding.

## DISCUSSION

■ Defendant's jurisdictional argument need not detain us long. This proceeding appears to be clearly "related to a case under Title 11." Therefore, the District Court has jurisdiction of it pursuant to 28 U.S.C. § 157, added by the "Bankruptcy Amendments and Federal Judgeship Act of 1984." ("1984 Act"). By order of Chief Judge Jack B. Weinstein, dated July 12, 1984 and amended August 17, 1984, the District Courts of this District have referred to the bankruptcy judges in this District "all cases under Title 11 or related to a case under Title 11 filed in the Eastern District of New York." Therefore, this Court has jurisdiction over the proceeding.

■ What is a grey area is whether or not this is a "core" proceeding, within the meaning of 28 U.S.C. § 157(b) and (c). In non-core proceedings the bankruptcy judge may not enter a final order unless the parties consent thereto. The judge's power is limited to submitting proposed findings of fact and conclusions of law to the District Court. Any final order or judgment is to be entered by the District Judge. 28 U.S.C. § 157(a). In core proceedings, contrarywise, the bankruptcy judge's order is final, subject only to appeal. 28 U.S.C. § 157(b).

By statutory definition, "core proceedings include, but are not limited to—... (G) motions to terminate, annul, or modify the automatic stay; ..." 28 U.S.C. § 157(b)(2)(G). The automatic stay to which this section refers is the stay imposed by 11 U.S.C. § 362.

■ Strictly speaking, the debtors in this proceeding are not seeking to modify the automatic stay but are urging this Court to stay the pending state proceedings under the power given the Court by 11 U.S.C. § 105. Nevertheless, although the question is not free from doubt, this Court is inclined to believe that the pending adversary proceeding can be deemed the equivalent of a motion to modify the automatic stay, since what is asked is a stay different from, and broader than, the automatic stay.

Alternatively, this proceeding is sufficiently similar to such a motion to have the character of a core proceeding. The specific enumeration of what are core proceedings in 28 U.S.C. § 157(b)(2) is explicitly stated not to be exclusive. Evidently what was intended to be embraced were the traditional areas of bankruptcy jurisdiction. An application for injunctive relief to protect this Court's jurisdiction is of this traditional character.

Accordingly, it is the opinion of this Court that this is a core proceeding as to which this Court's resolution is final.

■ As for the doctrine of sovereign immunity, another threshold issue raised by the defendants, that doctrine does not prevent injunctive relief against state officials in the proper circumstances. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

Turning now to the merits of the debtors' application for injunctive relief, the debtors evidently recognize that the pending state court proceedings are not automatically stayed by 11 U.S.C. § 362. Section 362(b) exempts from the automatic stay imposed by Section 362(a) "the commencement or continuation of a criminal action or proceeding against the debtor." 11 U.S.C. § 362(b)(1). Respecting this language, the authoritative Committee Reports note: "The bankruptcy laws are not a haven for criminal offenders, but are designed to give relief from financial over-extension. Thus, criminal actions and proceedings may proceed in spite of bankruptcy." H.R. No. 95–595, 95th Cong. 1st Sess.

at 342 (1977); S.R.Rep. No. 95–989, 95th Cong. 2d Sess. at 51 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5837, 6299.

The debtors, conceding that the exception in Section 362(b) from the automatic stay covers the pending state court proceedings which they seek to enjoin, request this Court to use its power under 11 U.S.C. § 105 to enlarge and supplement the automatic stay. As the leading text on bankruptcy notes the exceptions to the automatic stay set forth in § 362(b) "are not limitations upon the jurisdiction of the bankruptcy court or upon its power to enjoin" but "are simply exceptions to the stay which protect the estate automatically at the commencement of the case." 2 *Collier on Bankruptcy*, § 362.05 at p. 362–37 (15th ed. 1983). Section 105 of the Code, *Collier*'s observes, gives the bankruptcy court "ample power to enjoin actions excepted from the automatic stay which might interfere in the rehabilitated process, whether in a liquidation or reorganization case." *Ibid.*

Taking as our starting point, therefore, that the bankruptcy court has power under Section 105 to enlarge the automatic stay, should the Court exercise that power to stay criminal proceedings with which Congress did not intend to have bankruptcy interfere.

As *Collier*'s notes, the question is undecided. It prefers the view that despite the exception for criminal proceedings in Section 362(b)(1) that the bankruptcy court has the power to stay criminal proceedings but that such power is to be "exercised sparingly in the court's discretion." *Id.* at 362–39. However, as *Collier*'s also notes, the conclusion could also be reached that the bankruptcy courts are without power to stay criminal proceedings. *Ibid.*

Strongly militating against any interference by a bankruptcy court with a state criminal court proceeding and reinforcing the Code's legislative history are the notions of federalism reflected in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In that case, the Supreme Court held that a federal court should not enjoin a pending state criminal prosecution except under extraordinary circumstances where there is a great and immediate danger of irreparable harm to a plaintiff's federally protected rights that could not be eliminated by his defense against a single prosecution. As the Eleventh Circuit had occasion to point out in disapproving an injunction issued by a bankruptcy court staying a state court proceeding: "... 11 U.S.C. § 105(a) gives the bankruptcy court no more authority to ignore the principles of *Younger v. Harris* than does the grant of general jurisdiction to a federal court." *Barnette v. Evans*, 673 F.2d 1250, 1252 (11th Cir.1982).

Despite the clear congressional intent, reflected in the Code's legislative history and in the explicit language of the statute that bankruptcy not be a refuge from criminal proceedings, and the principles laid down in *Younger v. Harris, supra,* some lower Federal courts, principally in "bad check" cases, have enjoined pending state criminal proceedings. See, e.g., *In re Reid*, 9 B.R. 830 (Bankr.Ct.M.D.Ala.1981; *In re Caldwell*, 5 B.R. 740 (B.C.W.D.Va.1980); *In re Taylor*, 16 B.R. 323 (B.C.D.Md.1981). Their rationale, generally speaking, is that it is inconsistent with the objectives of the Code to permit criminal proceedings to compel payment of debts discharged in bankruptcy. These decisions were undoubtedly influenced by the fact that the criminal process was being used by private persons for no other purpose but to collect an otherwise dischargeable debt.

Other courts, including one within this Circuit, have refused to permit interference with state court proceedings. *Barnette v. Evans, supra; Matter of Davis*, 691 F.2d 176 (3d Cir.1982); *In re C.H. Stuart, Inc.*, 12 B.R. 85 (B.C.W.D.N.Y.1981). Even those courts that question whether restitution is compatible with a discharge in bankruptcy have held injunctive action improper. Thus, in reliance on the *Younger* doctrine, the Third Circuit sustained a bankruptcy court in refusing an injunction in a "bad check" case despite the Court's concern that mandatory restitution might conflict with the Bankruptcy Code policy of

providing debtors with a fresh start. *Matter of Davis, supra* at 178. See also, *In re Farrell,* 43 B.R. 115 (D.C.Tenn.1984) (bankruptcy court erred in enjoining a criminal prosecution but might properly have enjoined the state officials from seeking restitution or engaging in any negotiations to affect restitution). But see, *In re H. Cohen Caterers, Inc.,* 26 B.R. 1, 2 (Bankr.Ct. W.D.Ky.1981) (no injunction where state officials foreswore restitution).

In *Barnette v. Evans, supra,* the Court of Appeals in reversing the bankruptcy court which had enjoined a pending criminal prosecution on the theory that a state conviction mandating restitution would frustrate its jurisdiction to discharge the debt in bankruptcy, said:

> "The basic error of the bankruptcy judge was to misjudge the width of his turf. The purpose of bankruptcy is to protect those in financial, not moral, difficulty. The bankruptcy courts were not created as a haven for criminals. [Citations omitted]. There is a public interest in every good faith criminal proceeding, especially on the presentment of a grand jury, which overrides any interest the bankruptcy court may have in protecting the financial interest of debtors." 673 F.2d at 1251.

■ In the view of this Court, the fact that restitution is one of the objectives of the state criminal proceeding, or indeed *the sole* objective, of such proceeding, does not warrant interference with such criminal proceeding. Bankruptcy is a civil proceeding having as its objective the relief of the debtor through either discharging his debts, or providing a method for their payment. Criminal proceedings have as their objective vindication of the public policy of the State and the punishment and rehabilitation of offenders against that policy. Restitution is one of the methods of punishment and rehabilitation employed by the State. That a debtor's plan confirmed under Chapter 11 or Chapter 13 may, like an order of restitution entered in a criminal proceeding, result in the payment of the self-same debt does not mean that one proceeding is a substitute for the other.

Those courts that have squarely addressed the problem, and where the issue has not as simply been a peripheral one, have all held that a criminal court may require an offender as a condition of probation to make restitution to his victim for losses caused by an offense, even though the debt arising therefrom has been discharged in bankruptcy. *United States v. Alexander,* 743 F.2d 472 (7th Cir.1984); *United States v. Carson,* 669 F.2d 216 (5th Cir.1982); *In re Vik,* 45 B.R. 64 (B.C.N.D. Iowa 1984). Accord, *People v. Mosesson,* 78 Misc.2d 217, 356 N.Y.S.2d 483 (Sup.Ct. N.Y.1974); *People v. Topping Brothers,* 79 Misc.2d 260, 359 N.Y.S.2d 985 (Crim.Ct.N. Y.1974). According to the weight of authority a restitution order is not a "debt" within the contemplation of the bankruptcy laws and is not subject to discharge. *In re Vik, supra* at 67. The courts of New York are in agreement.

In *United States v. Alexander, supra,* the defendant, who was convicted of federal mail and wire fraud, claimed that the obligation to make restitution imposed by the trial court contravened the provisions of the Bankruptcy Code because the debts involved had been discharged in bankruptcy. With respect to this argument the Court said:

> "The bankruptcy proceeding is largely unconcerned with criminality, and discharge may occur regardless of how the debtor has incurred his debts ... The 'fresh start' envisioned by the imposition of probation conditions is entirely different from the one resulting from discharge in bankruptcy. Fundamental to the imposition of probation is the belief that its conditions will result in the rehabilitation of the probationer at no cost to the public safety. * * * Although imposition of a fine may have the same *pecuniary effect* as restitution on the probationer, the *rehabilitative* effect may well be augmented by the act of making one's victim's whole. We discern nothing in the bankruptcy code that envisions a con-

gressional intent to prevent sentencing judges from imposing such potentially rehabilitative probation conditions." 743 F.2d at 480.

In refusing to remove the obligation to make restitution as a condition of probation despite the defendant's receipt of a discharge in bankruptcy, New York's Supreme Court said:

"A discharge in bankruptcy has no effect whatsoever upon a condition of restitution of a criminal sentence. A bankruptcy proceeding is civil in nature and is intended to relieve an honest and unfortunate debtor of his debts and to permit him to begin his financial life anew [Citation omitted]. The condition of restitution in a sentence of probation is a part of the judgment of conviction. It does not create a debt nor a debtor-creditor relationship between the persons making and receiving restitution. As with any other condition of a probationary sentence it is intended as a means to insure the defendant will lead a law-abiding life thereafter (Penal Law, § 65.10)." *People v. Mosesson, supra* at 218, 356 N.Y. S.2d 483.

Neither the discharge of a debt nor the voluntary assumption of its payment in bankruptcy is the equivalent of an order of restitution as a condition of probation. The first lies entirely within the control of the debtor and is for his benefit; the second carries sanctions for its violation and its purpose is penalogical.

Bankruptcy Judge Edward D. Hayes of the Western District of New York put the matter most clearly in *In re C.H. Stuart, Inc., supra,* in refusing to enjoin a criminal prosecution for theft of services:

"When the State defines an act as criminal, this Court will not deem it to be otherwise. Simply put, if a debtor intentionally avoids payment for restaurant services he may become a debtor thereby, but he is also a thief in the State of New York. A thief cannot escape criminal sanctions by filing bankruptcy and listing his victim on his schedule of unsecured creditors." 12 B.R. at 86.

In any event, the *Younger* doctrine would preclude the relief the debtors request. There are no extraordinary circumstances present here which warrant interference by this Court with the pending State proceedings. The debtors are not threatened with irreparable injury. The " 'cost, anxiety, inconvenience' of defending oneself in a good faith criminal prosecution does not constitute irreparable injury." *Matter of Davis, supra* at 178; *Munson v. Gilliam,* 543 F.2d 48, 54 (8th Cir. 1976).

Accordingly, the motion to dismiss the complaint is granted.

SUBMIT ORDER.