**In re GANDER PARTNERS LLC, Copper Peak Development Corp., Prairie View Development Corp., Debtors.**

**Gander Partners LLC, Copper Peak Development Corporation and Prairie View Development Corporation, Plaintiffs,**

v.

**Harris Bank, N.A., Defendant.**

**Bankruptcy Nos. 10 B 08877, 10 B 08879, 10 B 08882.**

**Adversary No. 10 A 00981.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

July 16, 2010.

Scott R. Clar, Crane Heyman Simon Welch & Clar, Chicago, IL, for Plaintiffs.

Michael T. Benz, Chapman & Cutler LLP, Chicago, IL, for Plaintiffs/Defendant.

Richard Wohlleber, Chapman and Cutler LLP, Chicago, IL, for Defendant.

## AMENDED ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

JACQUELINE P. COX, Bankruptcy Judge.

This matter involves the Chapter 11 Bankruptcy petitions of Gander Partners LLC (10 B 08877) ("Gander Partners"); Prairie View Development Corporation (10 B 08882) ("Prairie View") and Copper Peak Development Corporation (10 B 08879) ("Copper Peak") which were filed on March 3, 2010. On March 30, 2010 the court entered an order allowing the joint administration of the bankruptcy estates of Gander Partners LLC, Copper Peak Development Corporation and Prairie View Development Corporation under the 10 B 08877 case number of Gander Partners LLC. (10 B 08877, Docket No. 23). Debtor Copper Peak Development Corporation was found to be a single asset real estate concern under 11 U.S.C. § 362(d)(3) by court order entered on April 7, 2010. (10 B 08879, Docket No. 26). Generally, the Debtors engage in the sale and development of improved and unimproved land in the southern suburbs of Cook County, Illinois. Before the recent economic downturn construction companies purchased improved lots from the various debtor entities and built buildings thereon.

## JURISDICTION

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(a). Under 28 U.S.C. § 1334(a) the federal district courts have "original and exclusive jurisdiction" of all cases under the Bankruptcy Code. However, the district courts may refer bankruptcy cases to the bankruptcy judges for their districts under 28 U.S.C. § 157(a). The District Court for the Northern District of Illinois has made such a reference through its Internal Operating Procedure 15(a). When presiding over a referred case, a bankruptcy judge has jurisdiction under 28 U.S.C. § 157(b)(1) to enter appropriate orders and judgments as to core proceedings in the case.

## FACTS

On April 21, 2010 adversary proceeding 10 A 981 was filed by the Debtors. It

seeks an injunction enjoining three state court lawsuits which seek to foreclose on the mortgages and recover on the principals' guarantees securing debts owed to Harris Bank, N.A. ("Harris Bank"). The Debtors filed the Motion for a Preliminary Injunction herein on May 5, 2010.

Each debtor includes at least one member of the Lemmons family as a principal. As to Gander Partners Michael G. Lemmons, Michael L. Lemmons, and Gander Development LLC ("Gander Development") are owners; Steve Lecas and Donald Graf own Gander Development. Michael L. Lemmons is the sole owner of Prairie View and Brandon Lemmons is the sole owner of Copper Peak. Harris Bank is a secured creditor in each estate. Michael G. Lemmons, Michael L. Lemmons, Brandon Lemmons, Steve Lecas and Donald Graf each guaranteed at least one of the Harris Bank loans. Harris Bank has sued each guarantor on those guarantees.

## DISCUSSION

Harris Bank argues that this court lacks "related to" jurisdiction to hear this matter based on *In re Teknek, LLC*, 563 F.3d 639 (7th Cir.2009). This argument is not convincing.

Bankruptcy courts possess limited subject matter jurisdiction. Proper bankruptcy court jurisdiction lies in four instances: "(1) all cases under the bankruptcy code ("title 11")—i.e., bankruptcy petitions; (2) civil proceedings 'arising under' title 11; (3) civil proceedings 'arising in' a case under title 11; and (4) civil proceedings 'related to' a case under title 11." *In re Resource Technology Corp.*, 2004 WL 419918, at *3 (N.D.Ill.2004). A claim 'arises under' title 11 when it is based on a cause of action determined by a statutory provision of title 11. Matters that 'arise in' cases under title 11 include matters concerning administration of the bankruptcy estate, such as orders to turn over property of the estate, determinations of the validity of liens, motions to appoint trustees under 11 U.S.C. § 1104 and contempt matters. COLLIER ON BANKRUPTCY ¶ 3.01[4][c][i][iv] (Alan N. Resnick & Henry J. Sommers eds., 16th ed.). A claim is 'related to' title 11 when its resolution "affects the amount of property available for distribution or the allocation among creditors". *Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir. 1989) (quoting *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir.1987).)

*Teknek* involved a contest regarding ownership of claims between a chapter 7 trustee and a judgment creditor. There are no such circumstances herein. The Debtors do not claim ownership of the claims they seek to temporarily enjoin. The Seventh Circuit held in *Teknek* that the claims involved were personal to the judgment creditor, that they were not general claims and that the bankruptcy estate had no interest in them. *Teknek*, 563 F.3d at 646–47.

The Seventh Circuit noted generally in *Teknek* that suits against a debtor's guarantor or insurer are allowed to proceed because they do not seek relief from the debtor. *Teknek*, 563 F.3d. at 649. Harris Bank argues that the Seventh Circuit's statement that guarantors' suits are allowed to proceed requires rejection of the request herein for a temporary injunction of the actions against the Debtors' guarantors. This court disagrees. The *Teknek* ruling did not address the propriety of temporarily enjoining lawsuits against a debtor's guarantors by a bankruptcy court. In making the statement Harris Bank relies on, the *Teknek* court was addressing situations where nondebtors and trustees/debtors disagree over which entity owns a claim. *Id.* In explaining the bankruptcy court's authority to enjoin litigation

where the debtor is not claiming ownership of a claim, the Seventh Circuit referred to its decision in *Fisher v. Apostolou*, 155 F.3d 876, where it affirmed the issuance of an injunction of litigation it specifically found to be related to a bankruptcy case. The Seventh Circuit explained the bankruptcy court's authority to stay litigation against nondebtors:

> In limited circumstances, the trustee may temporarily block adjudication of claims that are not property of the estate by petitioning the bankruptcy court to enjoin the other litigation, if it is sufficiently "related to" her own work on behalf of the estate. 28 U.S.C. § 1334(b). The jurisdiction of the bankruptcy court to stay actions in other courts extends beyond claims by and against the debtor, to include "suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate," *Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 161–62 (7th Cir.1994), or "the allocation of property among creditors". *In re Memorial Estates, Inc.*, 950 F.2d 1364, 1368 (7th Cir.1992).

*Fisher*, 155 F.3d at 882.

The lawsuits against the Debtors' guarantors are related to these bankruptcy cases as their resolution could hinder this court's ability to help the reorganization process by diverting funds necessary for a reorganization.

The court notes that Federal Rule of Bankruptcy Procedure 7001(7) provides that adversary proceedings include proceedings to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12 or chapter 13 plan provides for the relief. This court agrees with the following courts that ruled that proceedings involving requests to enjoin litigation pursuant to 11 U.S.C. § 105 are core proceedings over which bankruptcy judges have authority to enter final orders: *Walsh v. Abrams (In re HBG Servicenter, Inc.)*, 45 B.R. 668, 671 (Bankr.E.D.N.Y. 1985) and *Baptist Med. Ctr. of New York v. Singh*, 80 B.R. 637, 645 (Bankr.E.D.N.Y. 1987). Harris Bank's position that this court lacks "related to" jurisdiction herein is overruled.

Harris Bank also opposes imposition of the requested injunction based on a ruling in *In re Bora Bora*, 424 B.R. 17 (Bankr.D.Puerto Rico 2010). There a court denied a debtor's request to enjoin a lawsuit enforcing a guarantee against a nondebtor, the debtor's principal. The court noted that there were no allegations regarding the amount of time that the debtor's principal spent on the debtor's business and, as indicated in the disclosure statement, that the debtor's principal was not expected to fund the plan. For those reasons the court concluded that the litigation that the debtor wanted enjoined had no significant impact on the debtor. *Bora Bora*, 424 B.R. at 27. That case can be distinguished. The Debtors' principals herein have testified that they spend a considerable amount of time on the Debtors' affairs and that they will contribute funds to the Debtors' reorganization effort. Another reason *Bora Bora* should not limit the imposition of an injunction herein is that court's holding that a petitioner for an injunction against a lawsuit against a nondebtor has to show irreparable injury. *Bora Bora*, 424 B.R. at 25. The Seventh Circuit ruled in *Fisher* that a debtor seeking to enjoin litigation against a nondebtor need not show irreparable harm:

> [a] bankruptcy court can enjoin proceedings in other courts when it is satisfied that such proceedings would defeat or impair its jurisdiction over the case before it. In other words, the court does not need to demonstrate an inadequate remedy at law or irreparable harm.

*Fisher,* 155 F.3d at 882 (quoting *In re L & S Industries, Inc.,* 989 F.2d 929, 932 (7th Cir.1993)).

A district court in Pennsylvania recently affirmed the ruling of a bankruptcy court which granted an injunction of litigation against a nondebtor. *See In re Philadelphia Newspapers, LLC,* 407 B.R. 606 (E.D.Pa.2009).

## GROUNDS FOR REQUEST FOR PRELIMINARY INJUNCTION

Michael G. Lemmons testified that he spends approximately 35 to 45 hours a week managing the affairs of the Debtors. He and his father Michael L. Lemmons own 50% of Debtor Gander Partners. The remaining 50% member of Debtor Gander Partners is Gander Development whose members are Donald Graf and Steve Lecas. Gander Partners' Stone Creek development has sold 123 lots for between $130,000 and $135,000 each, for a total of $12 Million to $15 Million. Those funds were used to pay taxes and to repay loans to Harris Bank. Funds were distributed to owners for their related tax obligations. Harris Bank argues that the Debtors are not operating; Michael G. Lemmons says otherwise as Gander Partners has recently sold three lots, the receipts of which have reduced the Harris Bank debt. Michael G. Lemmons interfaces with the various partners and professionals and manages bankruptcy related issues. He is also responsible for all reporting, finance, accounting, rezoning and strategic planning matters. Before the bankruptcy cases were filed he contributed approximately $150,000 of his personal funds to Debtors Gander Partners and Prairie View. He wants to refinance the Harris Bank debt and is willing to personally guarantee the refinancing facility. The principals are now paying the Debtors' legal expenses. Michael G. Lemmons asserts, however, that if he is forced to spend his time and funds defending the guarantee actions in state court that such diversion of his time and funds could harm the Debtors as he would not then be able to attend to the Debtors' affairs and finance the Debtors' reorganization efforts. Transcript of June 9, 2010 hearing at pages 15–56.

Pursuant to Federal Rule of Evidence 701 the court overruled Harris Bank's objection to Mr. Lemmons' testimony regarding the value of the properties involved herein.

Michael L. Lemmons testified that he provides major financial support to the Debtors and that he is willing to continue to do so as part of the effort to refinance the Harris Bank debt. He has contributed over $4 Million to Gander Partners, $2.2 Million to Copper Peak and $1.8 Million to Prairie View. He contributes time to the management of the Debtors and can not continue to do so if he has to instead spend his time and funds defending himself in the three state court lawsuits on his personal guarantees. Transcript of June 9, 2010 hearing at pages 97–122.

Brandon Lemmons testified that he is the President and sole shareholder of Copper Peak. (The court notes that the adversary complaint at ¶ 8 indicates that Michael L. Lemmons is Copper Peak's sole shareholder). Brandon Lemmons spends approximately 20 hours a week on Copper Peak business matters and is committed to personally guaranteeing the refinancing of the Harris Bank debt. He has contributed $200,000 of his personal funds to date to Copper Peak. He testified that if he has to spend his time and funds defending himself in the state court lawsuits he will not be able to work on and contribute to Copper Peak's reorganization. Transcript of June 9, 2010 hearing at pages 124–147.

Steve Lecas testified that he and Donald Graf are the members of Gander Develop-

ment which is a 50% member of Gander Partners. He and Donald Graf have contributed a total of $1,000,000 towards Gander Development, $500,000 each. They are now helping to meet the Debtors' monthly interest payment obligations. He spends 30 hours a week marketing both lots and homes at the Stone Creek subdivision. He testified that if he has to spend his time and funds defending himself in the state court lawsuits, he will not be able to contribute his time and funds to the Debtors' reorganization efforts. Mr. Lecas is willing to personally guarantee the Debtors' effort to refinance the Harris Bank debt. Transcript of June 9, 2010 hearing at pages 148–159.

Donald Graf testified that he is responsible for preparing weekly reports and conducting subdivision inspections for Gander Partners. He also handles EPA matters, landscaping work and issues involving homeowner associations. He spends two or three days a week working on Gander Partners' matters. He has been involved in discussions about refinancing the Harris Bank debt and is willing to guarantee such.

The Debtors and their principals/owners have been sued in the following three state court lawsuits for mortgage foreclosure relief and for recovery on their guarantees:

Case No. 10 CH 01320 pending in the Circuit Court of Will County, Illinois;

Case No. 10 CH 1323 pending in the Circuit Court of Will County, Illinois; and

Case No. 10 L 3430 pending in the Circuit Court of Cook County, Illinois.

Due to the current downturn in the real estate market, sales of lots to builders have declined. Their business model has changed. They now sell lots to individuals and build homes to customers' specifications.

The bankruptcy filings were precipitated by Harris Bank's threat to take legal action against the Debtors' principals and owners who are all guarantors of approximately $18,000,000 of secured debt owed to Harris Bank.

The Debtors have leased land to various farmers.

The Monthly Operating Reports show capital contributions to the Debtors by the guarantors.

Harris Bank offered no witnesses at the hearing on the Motion for a Preliminary Injunction.

Each witness is vital to the Debtors' reorganization efforts and is willing to guarantee a loan to refinance the Harris Bank debt.

## AUTHORITY TO ENJOIN LAWSUITS AGAINST NON–DEBTORS

Under Section 362 of the Bankruptcy Code the filing of a petition operates as a stay of the commencement or continuation of proceedings against the debtor to recover on prepetition claims. 11 U.S.C. § 362(a). This provision protects assets of the debtor's estate but it does not stay actions against nondebtors, such as guarantors. However, there is authority for the issuance of a preliminary injunction under section 105(a) of the Bankruptcy Code to stay proceedings against nondebtors. Section 105(a) provides that the Bankruptcy Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title". 11 U.S.C. § 105(a).

Courts that have applied the preliminary injunction standards to determine whether to stay actions against nondebtors indicate that it is appropriate only in "unusual circumstances". *McCartney v. Integra Nat'l.*

*Bank North,* 106 F.3d 506, 510 (3d Cir. 1997).

■ A section 105 injunction restraining creditors from proceeding against non-debtors is justified only if the creditor actions would interfere with, deplete or adversely affect property of a debtor's estate or which would frustrate the statutory scheme embodied in Chapter 11 or diminish a debtor's ability to formulate a plan of reorganization. *In re Lazarus Burman Assocs.,* 161 B.R. 891, 898 (Bankr.E.D.N.Y. 1993).

Courts have generally recognized four circumstances in which the entry of a § 105 injunction restraining creditors from proceeding against nondebtors may be appropriate:

1. there be the danger of imminent, irreparable harm to the estate or the debtor's ability to reorganize [1];

2. there must be a reasonable likelihood of a successful reorganization;

3. the court must balance the relative harm as between the debtor and the creditor who would be restrained;

4. the court must consider the public interest; this requires a balancing of the public interest in successful bankruptcy reorganizations with other competing societal interests.

*In re Monroe Well Service, Inc.,* 67 B.R. 746, 751–52 (Bankr.E.D.Pa.1986).

■ The Seventh Circuit held in *Fisher* that a bankruptcy court may enjoin proceedings in other courts under the following circumstances: (1) when such proceedings defeat or impair its jurisdiction over the case before it; (2) the moving party has established a likelihood of success on the merits; and (3) the court must consider whether the injunction will harm the public interest. *Fisher,* 155 F.3d at 882.

■ The Debtors herein have satisfied each requirement by clear and convincing evidence. Each principals' assets are a source of funds for the Debtors' reorganization efforts. Preservation of their credit standing will play a vital role in the Debtors' efforts to refinance the Harris Bank debt. If the state court lawsuits lead to judgments against the principals, the principals' credit standings could be adversely affected, endangering the Debtors by decreasing their ability to guarantee the Debtors' efforts to refinance the Harris Bank debt. These circumstances amount to impairment of this court's jurisdiction.

The relatively limited harm to Harris Bank of delaying, not terminating, the state court lawsuits is balanced by the significant harm to the Debtors if the lawsuits are not temporarily stayed. If the lawsuits are allowed to proceed the Debtors could lose access to the funds, energy and time their principals prefer to continue investing in them. Harris Bank will not lose its rights. The reorganization objective is to pay Harris Bank in full by refinancing its loans. A short delay actually benefits Harris Bank as it would recover all monies owed it if the Debtors succeed in their effort to refinance the debt. If the lawsuits proceed their outcome could impair this court's jurisdiction to help the Debtors to reorganize as the source of funds to assist the reorganization would no longer be available.

There is a reasonable likelihood of a successful reorganization. The Debtors' principals have contributed their time, energy and money to the Debtors in the past and are capable of continuing to contribute their time, energy and money to the Debtors' future reorganization efforts.

---

**1.** As noted above the Seventh Circuit does not require the showing of irreparable injury since its 1998 ruling in *Fisher.* Fisher, *supra* at pages 785-86.

The public interest will be served by temporarily staying the state court lawsuits as the limited delay fosters the Debtors' reorganization. "[P]romoting a successful reorganization is one of the most important public interests". *In re Integrated Health Services, Inc.,* 281 B.R. 231, 239 (Bankr.D.Del.2002).

## INJUNCTION

The court enjoins Defendant Harris Bank, N.A. preliminarily from commencing or continuing any judicial, administrative, or other legal action or proceeding, including the following lawsuits: 10 CH 1320 in the Circuit Court of Will County, Illinois; 10 CH 1323 in the Circuit Court of Will County, Illinois; and 10 L 03430 in the Circuit Court of Cook County, Illinois, against Gander Partners LLC, Prairie View Development Corporation, Copper Peak Development Corporation, Gander Development LLC, Michael L. Lemmons, Michael G. Lemmons, Brandon Lemmons, Steve Lecas and Donald Graf.

Due to the scope of the extraordinary relief being provided herein, the court limits the duration of this preliminary injunction to 120 days, up to and including November 12, 2010.

Federal Rule of Bankruptcy Procedure 7065(c) states in part that a court may issue a preliminary injunction or temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. Fed. R. of Bankr.P. 7065(c). The court declines to require the Debtors to give security because of the limited duration of the injunction.