In re SCHWINN BICYCLE CO., et al., substantially consolidated, Debtor.

SCHWINN CYCLING & FITNESS, INC., Scott Sports Group, Inc., Schwinn Bicycle and Fitness Limited Partnership, Scott USA Inc., and SSG (Europe) S.A., Plaintiffs,

v.

Daniel BENONIS, a minor, and Robert Benonis, a minor, by and through their parents and natural guardians, William Benonis and Nancy Benonis, and William Benonis and Nancy Benonis, individually and in their own right, and Guy's Bicycles, Inc., Defendants.

Bankruptcy Nos. 92 B 22474
through 92 B 22482.
Adversary No. 96 A 01058.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 7, 1997.

James P. Golden, Hamberg & Golden, Philadelphia, PA, for Plaintiff.

Michael P. O'Neil, Freeborn & Peters, Chicago, IL, for Plaintiff.

Jonathon A. Bachman, Gould & Ratner, Elizabeth Graber, Rudnick & Wolfe, Martin Weisenberger, Chicago, IL, for Defendant.

## MEMORANDUM OPINION ON DEFENDANTS' MOTION TO DISMISS

JACK B. SCHMETTERER, Bankruptcy Judge.

This adversary proceeding was filed as assertedly related to bankruptcy proceedings filed by Schwinn Bicycle Co. and various related entities (collectively "Debtors"), all consolidated under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 et seq. Debtors' liquidating Plan of reorganization was confirmed on January 6, 1994. A year earlier, on January 19, 1993, the entity since succeeded to by Schwinn Cycling & Fitness Inc. ("New Schwinn") purchased Debtor's assets related to production.

On April 18, 1996, Defendants Daniel Benonis, Robert Benonis, William Benonis, and Nancy Benonis (collectively with Guy's Bicycles Inc. "Defendants") filed a products liability action in Pennsylvania state court against Debtor Schwinn Bicycle Co., New Schwinn, the other adversary plaintiffs herein, and also George Benonis, and Guy's Bicycles. On July 30, 1996, New Schwinn and the state court defendants (but not Debtor Schwinn Bicycle Co.) George Benonis, and Guy's Bicycles (collectively "Plaintiffs") filed this adversary complaint against the Defendants here seeking declaratory and injunctive relief against Defendants' attempts in state court to impose liability asserted here against these Plaintiffs as Debtors' purported successors for an injury that occurred January 28, 1995, involving equipment manufactured or sold by Debtors in 1992 prior to the bankruptcy filing here.

Defendants moved to dismiss this adversary proceeding, arguing that Plaintiffs can prove no set of facts in support of their allegations that would permit them to prevail on their claim. For reasons stated below,

Defendants' motion to dismiss the adversary complaint is allowed, and the adversary proceeding will be dismissed.

### BACKGROUND AND FACTS PLEADED

Schwinn Cycling & Fitness Inc. ("New Schwinn"), Scott USA Inc., and Scott Sports Group, Inc. are Delaware corporations. Schwinn Bicycle and Fitness Limited Partnership ("Schwinn Bicycle L.P.") was an Illinois limited partnership which was dissolved. SSG (Europe) S.A. is a corporation organized and existing under the laws of Switzerland.

The Debtor Schwinn Bicycle Company was formerly engaged in the business of designing, engineering, manufacturing, marketing and distributing bicycles, including exercise bicycles, exercise products, and related products. On October 7, 1992, Schwinn Bicycle Company and eight related affiliates (collectively, "Debtors") filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code. Debtors' cases were consolidated and jointly administered. Debtors remained in possession of their assets and continued in the management and operation of their businesses as debtors-in-possession.

With court approval (the "Sale Order"), Schwinn Bicycle L.P. purchased certain Acquired Assets of the Debtors under terms and conditions of an Asset Purchase Agreement dated January 19, 1993 ("Asset Purchase Agreement"). The Asset Purchase Agreement was executed by and between Debtors and Zell/Chilmark Fund L.P., a Delaware limited partnership. Pursuant to an Assignment dated January 19, 1993, Zell/Chilmark Fund L.P. assigned its rights and obligations as purchaser under the Asset Purchase Agreement to Bicycle and Fitness Limited Partnership, which changed its name to Schwinn Bicycle L.P. The sales transaction was consummated on January 20, 1993 ("Closing"). Following Closing of the sales transaction, the Debtor Schwinn Bicycle Company changed its name to S.B. Liquidating, Inc. Under its confirmed liquidating Plan, its assets have been liquidated, claims disputes resolved, and its cash assets have

since been partly, though not entirely, distributed.

The general partner of Schwinn Bicycle L.P. was Bike G.P., Inc. On July 15, 1993, Bike G.P., Inc., an Illinois corporation, merged with and into New Schwinn. The surviving corporation after the merger was New Schwinn. On or about July 15, 1993, Schwinn Bicycle L.P. was dissolved and the Acquired Assets and other assets of the limited partnership were distributed to New Schwinn.

### The Assumption Agreement

As a condition of the sales transaction, the Debtors and Schwinn Bicycle L.P.[1] executed an assumption agreement dated January 20, 1993 ("Assumption Agreement"). The Assumption Agreement was approved pursuant to the Sale Order. As part of consideration paid for the Acquired Assets, and as set forth in the Assumption Agreement, Schwinn Bicycle L.P. agreed to assume certain liabilities and obligations of the Debtors ("Assumed Liabilities"). The Assumption Agreement also provided that specified liabilities were retained by the Debtors. The liabilities of the Debtors that Schwinn Bicycle L.P. did not contractually assume and which were expressly retained by Debtors included any personal injury liability of Debtors and any product liability claim arising out of the conduct of Debtors' businesses prior to Closing. The non-assumption by Schwinn Bicycle L.P. of those liabilities retained by Debtors ("Retained Liabilities") is alleged to have been a material term of the sales transaction that was reflected in the consideration paid for the Acquired Assets.

### The Sale Order

On January 5, 1993, Debtors filed a motion with this Court seeking approval of the sale of the Acquired Assets to Schwinn Bicycle L.P. The sale was approved pursuant to an order dated January 19, 1993 (the "Sale Order"). Before approving the asset sale, the Court heard testimony of the extensive ef-

---

1. In the pleadings, Plaintiffs inconsistently refer to both Schwinn Bicycle and Fitness Limited Partnership and Schwinn Cycling and Fitness Limited Partnership. For the sake of clarity and consistency, Schwinn Bicycle L.P. will be used.

forts made by Debtors to sell the assets. The offer to purchase was "the only offer of which the debtors [were] aware." The Order found that the asset sale was in the best interest of the Debtors' estates, creditors, and non-creditors with interests in the bankruptcy. Sale of the Acquired Assets to Schwinn Bicycle L.P. was to be free and clear of any and all claims against such Assets, with all claims to attach to the proceeds. The Sale Order provided for such sale, free and clear of claims pursuant to Section 363 of the Bankruptcy Code. The Sale Order also stated that Schwinn Bicycle L.P. was not a successor in interest to Debtors.

Pursuant to the Sale Order, consideration to be paid for the Acquired Assets was approved, which consideration included the assumption of certain defined Assumed Liabilities and the retention by the Debtors of the Retained Liabilities. Schwinn Bicycle L.P. paid the consideration for the Acquired Assets to the Debtors, assumed the Assumed Liabilities, and complied with all of the other provisions of the Asset Purchase Agreement. Plaintiffs allege that, in doing so, the purchaser relied on terms of the Asset Purchase Agreement and related agreements, and on the benefits and protection of the Sale Order. As stated, Schwinn Bicycle L.P. was later dissolved, and the Acquired Assets, and other assets of the dissolved limited partnership, were distributed to New Schwinn.

### Confirmation of the Plan

Debtors filed their Second Amended Joint Liquidating Plan ("Plan") on December 30, 1993. The Plan was confirmed on January 6, 1994. In conjunction with the confirmed Plan, there have since been three separate pro rata distributions to unsecured creditors. Distribution has not yet been completed, but will likely be completed this year.

The Confirmation Order provided for an injunction permanently enjoining claims against any assets of the Debtors, against any direct or indirect successor in interest to the Debtors, or against any assets of the

aforementioned parties except through the confirmed Plan. The injunction bars claimants from bringing an action, collecting a judgment, creating or perfecting a lien, asserting any setoff, or proceeding in any manner that would not conform to or comply with the Plan or Confirmation Order. Confirmation Order, § 42.

Plaintiffs here argue that, while they are not successors to the Debtors for purposes of imposing successor liability under federal or state statutory or common law, they are transferees of Debtors' assets and/or are successors in interest to Debtors so as to be protected by that injunction.

In addition to entering that injunction, another injunctive order was entered (phrased as a continuation of the automatic stay under 11 U.S.C. § 362) against any personal injury claimants who fail to comply with the mediation procedures required under the Plan to encourage negotiations over such claims. Confirmation Order, § 45:

> The automatic stay provided for under § 362 of the Bankruptcy Code, and the injunction set forth in paragraph 40 of this Order, shall remain in effect after the Effective date until each Personal Injury Claimant not holding an Allowed Claim shall have complied with the procedural requirements provided for in Article XIII of the Second Amended Plan, and any noncomplying Claimant may be denied relief from the automatic stay or from the injunction.

Since a "Personal Injury Claimant" was defined under the Plan as one holding an injury claim that occurred prior to confirmation, this further injunctive order did not apply to anyone who, like Benonis here, was injured subsequently.[2]

The foregoing matters were set forth in Article XIII of the Plan. Plaintiffs now allege and contend that Defendants failed to comply with the requirements of Article XIII of the Plan and have violated and are violat-

---

**2.** Under the Plan, a "Personal Injury Claimant" is defined as "a holder of a Personal Injury Claim." Plan, ¶ 1.37. A "Personal Injury Claim" is defined as "a Claim resulting from a tort attributable to one of the debtors, and ... *occurring prior to the Confirmation Date.*" Plan, ¶ 1.35 (emphasis added).

ing one or another injunction entered as part of the Confirmation Order.

By Order entered February 16, 1994, setting a claims bar date and requiring notice to creditors, any person asserting a personal injury claim as a result of injuries occurring between October 7, 1992, and January 7, 1994, had to file a proof of claim herein on or before May 31, 1994. "Personal Injury Claimants" who failed to file timely their proofs of claim were not entitled to receive any distribution under the Plan, and any such claims were to be disallowed. The injury alleged in the Pennsylvania suit is alleged to have occurred one year after Plan confirmation and eight months after the claims bar date expired. No injured party involved here filed or sought leave to file proofs of claim in the related bankruptcy case, or to obtain any other relief in this Court, and none ever sought an extension of time to do so. In short, they do not seek to share in the bankruptcy estate or distributions therefrom. Of course, as stated, personal injury claims occurring post-confirmation were not covered by the Plan. Moreover, the parties have not pointed to anything in the confirmed Plan purporting to deal with or allow for claims that might arise after the confirmation date (referred to herein as "future claims"). No provision was made in the Plan to set aside funds for future claimants, and no counsel or special representative was appointed to represent interests of future claimants. Needless to say, because the accident occurred long after confirmation, no notice of the Plan confirmation process was sent to any person who had not yet been injured, nor could such notice have been sent.

### The Pennsylvania Action

On April 18, 1996, Daniel Benonis, William and Nancy Benonis, and Robert Benonis (collectively "Benonises") filed a suit ("Pennsylvania Action") against Debtor Schwinn Bicycle Co., New Schwinn, and related entities. The Benonises did not seek relief from any injunction entered herein prior to filing the Pennsylvania Action. On July 10, 1996, the Benonises filed their amended complaint. Other defendants to the Pennsylvania Action included George Benonis, the owner of the exercise bicycle (and the grandfather of Daniel and Robert Benonis), and Guy's Bicycles, Inc., the retailer who sold the exercise bicycle to George Benonis. Guy's Bicycles is a Pennsylvania corporation with a principal place of business in that state. Guy's Bicycles has filed a cross-claim against Plaintiffs.

The Pennsylvania action alleges that Daniel Benonis, a minor, was injured on January 28, 1995, by a model XR–6 exercise bicycle ("Exercise Bicycle") purchased by Daniel Benonis's grandfather, George Benonis, on or about October 17, 1979. The complaint alleges that the Exercise Bicycle was "sold, distributed, designed, manufactured or otherwise placed in the stream of commerce by" Debtors and Guy's Bicycles, Inc. Debtors ceased distributing the XR series sometime before 1989. The complaint seeks damages against the Debtors on theories of strict liability and negligence, and seeks to impose successor liability on New Schwinn on the theory that it is a continuation of, successor in interest to, or otherwise the same as Debtors and therefore liable for any negligence of Debtors in construction of the exercise bicycle.

Plaintiffs herein filed a responsive pleading to the Pennsylvania complaint on June 7, 1996. Among other things, they pleaded that the Benonises could not maintain their action because of the terms governing the purchase of the Acquired Assets. They asserted that the Benonises are enjoined from suing them and must comply with procedures set forth in the Plan for making their claims against the Debtors. The Benonises dispute the assertion that any orders entered in the bankruptcy proceeding concerning sale of the Acquired Assets or otherwise apply to them.

A case management conference was held by the state court judge in the Pennsylvania Action on July 17, 1996, for purposes of setting discovery and trial schedules. At the conference it was agreed to defer the Pennsylvania Action due to the pending bankruptcy case and New Schwinn's stated intention to commence this adversary proceeding.[3]

---

3. Since the case management conference, the Benonises have supposedly offered to dismiss

Plaintiffs contend here that the Benonises are violating and continue to violate the Sale Order by seeking recovery from Plaintiffs for liabilities assertedly retained by Debtors both contractually and as part of the sale and Confirmation Order. Moreover, Plaintiffs argue that, should the Pennsylvania Action proceed, they will be entitled under the sale contract to seek recovery from Debtors' liquidating estate for fees, costs, and expenses incurred in defending the Pennsylvania Action and for any amounts awarded to the Benonises in the Pennsylvania Action. They thus claim a right to subject Debtors' estates to potential liabilities. Such liabilities, they say, may significantly affect Debtors and the bankruptcy proceeding. (However, they did not join Debtors in this case and we do not have Debtors' position on that point.) Plaintiffs further allege that they have no adequate remedy at law and seek a new injunction in this proceeding to block the Pennsylvania Action by applying one of the injunctions entered here to that Action.

## DISCUSSION

### Jurisdiction

The parties here have agreed that jurisdiction lies here to decide all issues presented.[4] However, a bankruptcy judge always has the authority and responsibility to determine independently whether jurisdiction lies over issues presented regardless of whether or not the parties have challenged jurisdiction. *See, e.g., Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 179 (7th Cir.1994). If jurisdiction is not challenged by a party, it may be raised *sua sponte* by a federal court at any point in the proceedings. *Jackson v. Consolidated Rail Corp.*, 717 F.2d 1045, 1055 (7th Cir. 1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984).

■ Bankruptcy court jurisdiction extends to all civil proceedings arising under Title 11 or arising in or related to cases under Title 11. 28 U.S.C. § 1334(b). A proceeding which does not arise under Title 11 or does not arise in or is not related to a case under Title 11 may not be heard or determined by a bankruptcy judge. *See Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 162 (7th Cir.1994). "The phrase 'arising under title 11' describes those proceedings that involve a cause of action created or determined by a statutory provision of title 11." *In re Markos Gurnee Partnership*, 182 B.R. 211, 220 (Bankr.N.D.Ill.1995), *aff'd sub nom, State of Illinois, Dept. of Revenue v. Schechter*, 195 B.R. 380 (N.D.Ill.1996); *see also In re Spaulding & Co.*, 131 B.R. 84, 88 (N.D.Ill. 1990) (citing *In re Wood*, 825 F.2d 90, 96 (5th Cir.1987)). "Arising in" jurisdiction encompasses issues relating to administration of bankruptcy matters that arise only in bankruptcy cases. *Id.* "Related to" jurisdiction describes proceedings which affect the amount of property available for distribution or the allocation of property among creditors. *Id.* (quoting *Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir. 1989)); *see also In re Xonics, Inc.*, 813 F.2d 127, 133 (7th Cir.1987); *In re Spaulding & Co.*, 111 B.R. 689, 692 (Bankr.N.D.Ill.), *aff'd*, 131 B.R. 84 (N.D.Ill.1990).

■ Ordinarily, bankruptcy courts do not have jurisdiction over disputes between non-debtor parties where the dispute does not involve property of the estate, does not affect administration of the estate, or will not affect recovery of creditors under a confirmed plan. *See Zerand–Bernal*, 23 F.3d at 161–62; *Xonics*, 813 F.2d 127; *In re Kubly*, 818 F.2d 643 (7th Cir.1987). Bankruptcy jurisdiction is limited jurisdiction. Although it is designed to provide a single forum for dealing with all claims to a debtor's assets, it "extends no further than its purpose." *Xonics*, 813 F.2d at 131. Moreover, the jurisdictional authority of a bankruptcy judge is sharply reduced following confirmation. *See Pettibone Corp. v. Easley*, 935 F.2d 120 (7th Cir.1991). However, jurisdiction is retained

---

claims against the Debtor Defendant in the Pennsylvania case, but it has not been reported that the offer of dismissal proceeded beyond the talking stage, and the Pennsylvania case apparently still pends against that Defendant. The Debtor was not sued herein, has not intervened in this Adversary proceeding, and has not sought relief from this Court from the Pennsylvania action.

4. Defendants' Motion to Dismiss, n. 1, p. 2; Plaintiffs' Opposing Memorandum at pp. 9–10.

to a limited extent post-confirmation to ensure that reorganization plans are implemented, *In re Spiers Graff Spiers,* 190 B.R. 1001, 1007 (Bankr.N.D.Ill.1996) (collecting cases), and to protect estate assets devoted to implement the confirmed Plan. *Matter of Energy Cooperative, Inc.,* 886 F.2d 921, 929–930 (7th Cir.1989). Accordingly, jurisdiction lies over certain disputes, even those arising post-confirmation, that may affect a former Chapter 11 debtor's chances of successfully implementing its confirmed plan of reorganization.

However, the bankruptcy court clearly lacks authority to enjoin all possible future lawsuits against a buyer at a bankruptcy sale. *Zerand–Bernal,* 23 F.3d at 163. The facts of this case have some similarity to those involved in *Zerand–Bernal.* In that case, the purchaser of debtor's assets filed an adversary complaint seeking to reopen the bankruptcy and enjoin a post-confirmation successor liability action. The sale order there approved the sale free and clear of liens and claims. In addition, both the sale agreement and the debtor's plan of reorganization provided for the retention of jurisdiction to enforce the sale agreement. The plan was confirmed. Over four years later, a products liability suit was filed against the debtor, Zerand–Bernal and others. By that time, all of the debtor's property had been distributed. Rather than defend the complaint in district court, Zerand–Bernal filed a bankruptcy adversary complaint seeking to enjoin parties from presenting the other proceeding based on a provision in the sale agreement which provided for enjoining of any products liability claims against Zerand–Bernal that related to equipment sales which occurred prior to the asset sale. *Zerand–Bernal,* 23 F.3d at 161. The bankruptcy court held that it lacked jurisdiction over the adversary; the district and circuit courts affirmed. *Id.*

The Circuit Court opinion in *Zerand–Bernal* held that there was no "related to" jurisdiction as the claim was neither by nor against the debtor, and as all of debtor's property had been distributed, the suit could not have affected the amount of property available for distribution to creditors. *Id.* at 162 Moreover, the opinion stated "[b]ankruptcy is a system of entitlements (of both debtors and creditors) created by federal law, but a dispute over the meaning or validity of an agreement between the purchaser at a bankruptcy sale and some third party likewise arises under state rather than federal law." *Id.* It did comment that,

> [a]n attack on a sale agreement that is the core and premise of a plan of reorganization is an attack on the plan itself, because the sale could not be undone without rescinding the plan, and an order confirming a plan becomes irrevocable (barring fraud) 180 days after its entry.

*Id.* at 164 (*citing* 11 U.S.C. § 1144). The opinion discussed but did not decide the issue whether a non-debtor action that might trigger a related suit by or against the debtor is itself therefore a "related" action. *Id.* (collecting cases and commenting that circuits have divided on this issue).

■ The facts here are very similar to those in *Zerand–Bernal.* The core dispute between the parties that affects this bankruptcy is whether New Schwinn has successor liability for any negligence by the Debtors in manufacturing the Exercise Bicycle, that being an issue under applicable state law. However, to pose that issue here, the Plaintiffs seek to rely on contractual terms and an injunction provision entered here that protected Debtors' successors in interest—as shown below—(but in a far more limited way than Plaintiffs contend).

This case has several similarities with *Zerand–Bernal:* The underlying liability issue rests on state law; the Confirmation Order was entered here more than 180 days before this Adversary was filed and has become unrevocable (barring fraud) under 11 U.S.C. § 1144; and, of course, Plaintiffs here are seeking to impose against a third party terms of a sale agreement and confirmation order entered here.

The parties each contend, however, that there is one significant fact here not present in *Zerand–Bernal*—that the Debtor still holds undistributed assets; that if those plaintiffs lose, they would by some theory contend that the bankruptcy estate should indemnify them; and that therefore the is-

sues here might affect the amounts available for distribution to other creditors. Is that possibility enough to permit a finding of jurisdiction here?

■■■ As stated, "related to" jurisdiction encompasses tort, contract, and other legal claims by and against the debtor, as well as suits which may affect the amount of property available for distribution through the bankruptcy estate. *Id.* at 161. However, the instant Adversary Complaint is neither a complaint by nor against the Debtor. Rather, it is brought by the party or parties which purchased the Debtors' assets pursuant to an assignment, and seeks to impact tort plaintiffs in the Pennsylvania Action.

Debtors' plan was confirmed over three years ago on January 6, 1994. Distribution of Debtors' assets began over two years ago, albeit not yet completed. However, the possibility that resolution of the issues presented herein will affect the bankruptcy estate is subject to many contingencies. Defendants argue that the Plaintiffs here would have an administrative claim against the reorganized debtor for breach of contract if the Pennsylvania court proceeds. However, for such a claim to exist, Defendants would have to succeed in their state court action, and Plaintiffs would have to sue here and succeed in a post-confirmation breach of contract action against Debtors. Bankruptcy court provides a limited forum for good reason. When the relationship between a predominantly state court action and its possible impact on a debtor's estate available for distribution is highly contingent and problematic, any possible "related to" jurisdiction is tenuous. That is the case here.

■■■ Even if Plaintiffs are successful in their state court action, Defendants do not have an automatic indemnification claim. The bankruptcy estate would not be affected until the third party action was brought and tried. Moreover, even if the third party action is "favorably" resolved, Debtors could still relitigate or adopt any position in response to any subsequent claim. *Pacor Inc. v. Higgins,* 743 F.2d 984, 995 (3rd Cir.1984); *see also, In re Spaulding & Co.,* 131 B.R. 84, 89 (N.D.Ill.1990); *Nickum v. Brakegate, Ltd.,* 128 B.R. 648 (C.D.Ill.1991), *appeal dis-missed sub nom, Hernandez v. Brakegate, Ltd.,* 942 F.2d 1223 (7th Cir.1991); *and see In re Dow Corning Corp.,* 86 F.3d 482, 494 (6th Cir.1996) (although jurisdiction existed where there were thousands of contingent contribution claims, court distinguished the situation where there would be only one contingent contribution claim). "Allowing a non-debtor party to litigate its non-debtor dispute involving a purported indemnification claim against the debtor in a bankruptcy forum which may or may not result in a claim against the estate would defeat the very scheme of efficient claims resolution." *In re Salem Mills, Inc.,* 148 B.R. 505, 509 (Bankr. N.D.Ill.1992).

A dispute as to whether an asset purchaser can be held liable under the successorship doctrine is a matter of state law not federal. When a dispute is sufficiently remote from the body of federal law which claims to confer jurisdiction, "the federal interest in furnishing the rule of decision for the dispute becomes progressively weaker." *Zerand–Bernal,* 23 F.3d at 162. Similarly, the dispute in *In re Xonics* focused on predominantly state law issues. 813 F.2d at 129. That dispute was based upon conflicting interpretations of contracts, a state law cause of action. *Id.* at 130. One party in *Xonics* argued that the bankruptcy court's continuing power to enforce its own orders invoked jurisdiction. *Id.* However, a state law cause of action should be resolved in a state forum; a federal order without more cannot be used as a basis of jurisdiction. *Id.* Likewise, the Confirmation Order, Sale Order, or confirmed Plan without more cannot bestow federal jurisdiction where it does not otherwise exist. Successor liability is predominantly a creature of state law. It rests almost entirely on issues of state law. When such state law issues predominate, bankruptcy court jurisdiction is doubtful. *Zerand–Bernal,* 23 F.3d at 162. Bankruptcy court adjudication of state successor liability issues between parties to the Pennsylvania action is itself not possible here for lack of jurisdiction.

Jurisdiction is lacking here for another reason: Each count of the Complaint rests on misreading of the documents on which it

rests, and there is no order of this Court on which the asserted counts may rest.

■ However, even though the Court lacks jurisdiction to determine matters of state successor liability, it still has jurisdiction to interpret its own orders. *In re Kewanee Boiler Corp.,* 198 B.R. 519, 525 (Bankr.N.D.Ill.1996) (citing *Matter of Specialty Equipment Cos., Inc.,* 3 F.3d 1043, 1045 (7th Cir.1993)).

### Failure to State a Claim upon Which Relief Can Be Granted

In order for Defendants to prevail on their motion to dismiss, it must appear from the pleadings that Plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Gorski v. Troy,* 929 F.2d 1183, 1186 (7th Cir.1991). The issue is not whether Plaintiffs will ultimately prevail, but whether they have pleaded a cause of action sufficient to entitle them to offer evidence in support of their claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The Court must consider both pleaded facts and reasonable inferences drawn from pleaded facts in a light most favorable to Plaintiffs when reviewing the Defendants' motion to dismiss. *Gorski,* 929 F.2d at 1186; *Corcoran v. Chicago Park Dist.,* 875 F.2d 609 (7th Cir.1989); *Ross v. Creighton Univ.,* 740 F.Supp. 1319, 1326 (N.D.Ill.1990). Such consideration here, however, does not allow this Adversary proceeding to stand. Basically, Plaintiffs here have completely misread terms of the documents in proceedings here on which they rely.

The thrust of Plaintiffs' argument is that the Confirmation Order, Sale Order, and Plan provide for an injunction barring even "future" post-confirmation claimants from proceeding against Plaintiffs. However, at the time these orders were entered, Defendants did not have a claim and the documents at issue did not purport to cover post-confirmation claims. At the time of confirmation, Benonis' injury was over a year into the future. Injuries covered by the Plan were limited to claims arising prior to the confirmation date. The Plan makes no provision for, nor does it even mention future claimants. Moreover, the Confirmation Order provides that the Plan is binding upon Debtors, entities acquiring property under the Plan, and any Holder of a Claim or Interest. Plan at ¶ 31. As stated, future claimants were not contemplated or treated under the confirmed Plan, as discussed below, nor were they "Holders of a Claim." Thus, even viewing pleaded facts and reasonable inferences in a light most favorable to Plaintiffs, Plaintiffs have failed to state a claim upon which relief can be granted and cannot plead a case against the Defendants.

### Count I

In Count I of the Adversary Complaint, Plaintiffs request declaratory judgment that the injunction entered under Plan and Confirmation Order enjoins Defendants from commencing or continuing the prosecution or pursuit of their state court actions against Plaintiffs.

■ The Plan provided that injunction in these terms:

> The automatic stay of Section 362 of the bankruptcy Code shall remain in effect after the Effective Date until each *Personal Injury Claimant* not holding an Allowed Claim shall have complied with the following procedural requirements. Any non-complying claimant shall be denied relief from the automatic stay established under 11 U.S.C. Section 362.

Plan, Article XIII (emphasis added). This language was repeated in ¶ 45 of the Confirmation Order quoted hereinabove. As stated, the Plan defines "Personal Injury Claimant" as a holder of a Personal Injury Claim which is defined as a claim "resulting from a tort attributable to one of the Debtors and based upon personal injury, product liability, property damage or other similar Claims occurring prior to the Confirmation Date." Plan §§ 1.37, 1.35. The Plan was confirmed on January 6, 1994. Defendants' injury occurred on January 28, 1995. Thus, this provision of the Plan does not apply to the injury claim in the Pennsylvania Action.

Moreover, a claim in bankruptcy is defined in 11 U.S.C. § 101(5)(A) as "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." At confirmation, no Defendant had any such "claim." Benonis had not yet been injured and therefore had no "right to payment" at all under nonbankruptcy law at any time prior to Debtors' confirmation and therefore had no pre-petition or pre-confirmation "claim". His "future claim" was not "contingent" or "unmatured" in any legal sense pre-petition or pre-confirmation. Debtors owed no debt to Benonis at all. In short, until the accident actually occurred, Benonis had no "claim" under § 101(5) against Debtors.

■ However, the Plan Confirmation Order provided other language on which Plaintiffs here rely:

> ... all persons who have held, hold or may hold Claims against any of the Debtors, whether arising prior to or subsequent to the Confirmation Date, ... shall be permanently enjoined ... from taking any of the following action [sic] with respect to such Claims or Interests: (a) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtors, any of their assets, *or any direct or indirect successor in interest to Debtors, including the Plan Committee, any of its members, and the Designated Representative, or any assets of any such transferee or successor.*

Confirmation Order, ¶ 42. (Emphasis added.) As stated, Plaintiffs here argue that, while they are not successors to Debtors for purposes of imposing successor liability under federal or state statutory or common law, they were somehow intended to be transferees or successors for purposes of the foregoing injunction. In this contention, Plaintiffs are clearly incorrect, as reading of the entire ¶ 42 language demonstrates:

> Except as otherwise provided in the Second Amended Plan (including, without limitation, in any agreement entered into pursuant to the Second Amended Plan) or this Order and as of the Effective Date, all persons who have held, hold or may hold claims against any of the Debtors, whether arising prior to or subsequent to the Confirmation Date, or who have held, hold or may hold interests acquired on or before the date of this Order, shall be permanently enjoined, subject to the provisions of Paragraph 44(k) of the Order, from taking any of the following actions with respect to such Claims or Interests: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtors, any of their assets, or any direct or indirect successor in interest to the Debtors, including the Plan Committee, any of its members, and the Designated Representative, or any assets of any such transferee or successor; (b) enforcing levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtors, any of their assets, or any direct or indirect successor in interest to the Debtors, any of their assets, or any direct or indirect successor in interest to the Debtors, including the Plan Committee, any of its members, and the Designated Representative, or any assets of any such transferee or successor; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, any of their assets, or any direct or indirect successor in interest to the Debtors, including the Plan Committee, any of its members, and the Designated Representative, or any assets of any *such* transferee or successor; (d) asserting any set-off, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Debtors, any of their assets, or any direct or indirect transferee of any assets of, or successor in interest to, the Debtors, including the Plan Committee, any of its members and the Designated Representative; and (e) proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Second Amended Plan or this Order. *This injunction is issued pursuant to, and*

*in furtherance of, 11 U.S.C. § § 1141(a), (b) and (c) and 105, and is issued to preserve and protect assets of and property of the estates, to protect the integrity of the estate and the Second Amended Plan. The Estate and its creditors have no adequate remedy at law to enforce compliance with the Second Amended Plan in ` the absence of this injunction and the Estate, its creditors, and the Second Amended Plan will be irreparably harmed and impeded should this injunction not be entered. Further support for this injunction is found in Matter of Energy Cooperative, Inc., 886 F.2d 921, 929–930 (7th Cir.1989).*

(Emphasis added.)

Thus, the injunction language was clearly drafted and specifically by its terms intended only to protect the bankruptcy estate devoted to Plan distribution, and to protect such distribution by any party possessing assets of that estate. The injunction squarely and expressly rested on this Court's responsibility to protect that estate and had no purpose to protect non-debtors or their assets or to affect the rights of persons who might be injured after confirmation. Plaintiff's attempt to obtain shelter or protection from the language of ¶ 42 must clearly fail. The language in ¶ 42 of the Plan Confirmation Order can hardly be read to apply to that Buyer, and this can impose no protection for the Plaintiffs here.

Moreover, the Sale Order itself provided that

The Buyer is only buying the Purchased Assets and *is not a successor in interest to the Debtors,* nor does the Buyer's acquisition of the Purchased Assets reflect a substantial continuity of the operations of the businesses of the Debtors.

Sale Order at ¶ Q (emphasis added).

Thus, the buyer expressly agreed that it was not Debtors' "successor in interest," and it was certainly not intended in contemporaneous sale documents to be Debtors' successor in interest for purposes of injunctive protection under the Plan.

Moreover, no Plaintiff here is a "transferee" as that term is used in Confirmation Order ¶ 42 in the language Plaintiffs

rely on. That provision does not say the assets of "any transferee" are protected, but gives protection to "any *such* transferee," thus referring specifically to the assets of the direct or indirect successors in interest to the Debtors, those being the Plan Committee, any of its members, and the Designated Representative. When "such" is used in a phrase, it indicates:

Of that kind, having particular quality or character specified. Identical with, being the same as what has been mentioned. Alike, similar, of the like kind. "Such" represents the object as already particularized in terms which are not mentioned, and is a descriptive and relative word, referring to the last antecedent.

Black's Law Dictionary, 6th Ed. at 1432. Thus "any such transferee" refers specifically to direct and indirect successor in interest and those entities specified. Plaintiffs were not so specified. The Sale Order, Asset Purchase Agreement, and Assumption Agreement were all executed in January 1993, one year prior to confirmation. Had the Confirmation Order been intended to include Plaintiffs as designated transferees, it could have so specified. It did not. Thus, the general injunction in the Confirmation Order does not by its terms apply to protect Plaintiffs and was not intended to protect them. Since Plaintiffs do not in their Complaint demonstrate any right to injunctive protection out of either the Sale Order or Confirmation Order, Count I fails to state a basis for relief and will be dismissed.

It should not be necessary to say, but to avoid misunderstanding will be specified, that this opinion is in no sense intended to adjudicate whether under non-bankruptcy law the Pennsylvania case defendants are liable as successors of one or more Debtors. The fact that they are not "successors in interest" under the Confirmation Order or Sale Order does not adjudicate their status under applicable state law.

### Count II

In Count II, Plaintiffs request a declaratory judgment declaring that, pursuant to ¶ Q of the Sale Order which stated that the Buyer was not a successor in interest to

the Debtors, Plaintiffs cannot be pursued on a successor liability theory. "The successorship doctrine provides an exception from the general rule that a purchaser of assets does not acquire a seller's liabilities." *Chicago Truck Drivers, Helpers and Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.,* 59 F.3d 48, 49 (7th Cir.1995) (citing *Chaveriat v. Williams Pipe Line Co.,* 11 F.3d 1420, 1424 (7th Cir.1993)). In their motion to dismiss, Defendants argue that this Count must be dismissed as they failed to receive adequate notice of the sale order and because the Plan makes no provision for the payment of post-confirmation personal injury claims.

Defendants here state correctly that the Plan contains no specific provision for payment of post-confirmation personal injury claims, and it is obviously true that no notice went or could have gone to the Benonis family about the bankruptcy wherein the Plan was confirmed long before the injury in issue here.

"Notice is the cornerstone underpinning Bankruptcy Code procedure." *In re Kewanee Boiler Corp.,* 198 B.R. 519, 529 (Bankr. N.D.Ill.1996) (citing *Western Auto Supply v. Savage Arms, Inc. (In re Savage Industries, Inc.),* 43 F.3d 714, 719 (1st Cir.1994)). It is well established that actual notice is only necessary as to known creditors. *Matter of Chicago, Milwaukee, St. Paul & Pacific R. Co.,* 974 F.2d 775, 788 (7th Cir.1992) (citing *In re Chicago Pacific, Corp.,* 773 F.2d 909, 916–17 (7th Cir.1985)). An unknown creditor is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course or business come to knowledge [of the debtor]." *Chemetron Corp. v. Jones,* 72 F.3d 341, 346 (3rd Cir.1995). (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 317, 70 S.Ct. 652, 659, 94 L.Ed. 865 (1950)). Defendants were certainly unknown creditors. *See Chemetron,* 72 F.3d at 346. Reasonable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657.

Moreover, the Fifth Amendment requires meaningful notice to afford due process. "It is universally agreed that adequate notice lies at the heart of due process. Unless a person is adequately informed of the reasons for denial of a legal interest, a hearing serves no purpose—and resembles more a scene from Katka than a constitutional process." *Chicago Cable Communications v. Chicago Cable Commission,* 879 F.2d 1540, 1546 (7th Cir.1989) (quoting *Cosby v. Ward,* 843 F.2d 967, 982 (7th Cir.1988)).

However, without knowing today who will be injured tomorrow, notice to particular individuals who may be injured in the future cannot be given. *Kewanee Boiler,* 198 B.R. at 530. Whatever purposes might be found in the Bankruptcy Code, the Code cannot justify disregarding due process concerns and bankruptcy notice requirements to the detriment of persons affected and the benefit of businesses seeking to eliminate liability while possibly recovering added value for known creditors who receive notice. *See In re UNR Industries, Inc.,* 29 B.R. 741, 747 (N.D.Ill.1983).

When the Sale Order was entered in Debtors' bankruptcy case, persons who might be injured in the future could not be identified with enough specificity to allow them to be notified. It is hard to contemplate any meaningful notice by the Debtor. Should Debtors have affixed a sticker to every exercise bicycle ever sold, warning persons coming into contact with it that it may be dangerous and any claims for future injuries might be resolved in bankruptcy? *Id.* Even if a list could have been compiled of every bicycle owner, it is doubtful notice could have reached all future victims. It is likewise doubtful that any general warning would have motivated future victims to participate actively in the bankruptcy proceeding.

Allowing provisions of the Sale Order to bind these Defendants, even if that Order was intended to do so, would violate the Fifth Amendment because of fairness and due process concerns and would also violate bankruptcy notice requirements. Defendants had no opportunity at all to take action in response to any impending deprivation of its rights through the confirmation process. *In*

*re Pettibone Corp.*, 151 B.R. 166, 172 (Bankr. N.D.Ill.1993) (citing *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 13, 98 S.Ct. 1554, 1562, 56 L.Ed.2d 30 (1978); *Armstrong v. Manzo*, 380 U.S. 545, 551–52, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)).

The issue posed by Count II is simply this: Whether the Defendants, who at the time of sale had no claim against the bankruptcy estate or intent to assert one, can be barred from suing a third party on state law theory of successor liability because of the contract between buyer and seller. As discussed, the answer is negative, and the Count must be dismissed.

### Count III

■ Count III requests a new injunction under 11 U.S.C. § 105(a), permanently enjoining the prosecution of Defendants' state court action as well as any other action by Defendants against Plaintiffs. Section 105(a) gives the bankruptcy court authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). However, a bankruptcy judge can use such authority only if core or related jurisdiction otherwise lies over subject matter of the dispute.

Defendants argue that Count III must be dismissed because Defendants failed to receive adequate notice of the Sale Order and because bankruptcy sale orders in general cannot bar successor liability actions against third parties. Notice to Defendants at the time of confirmation was non-existent, let alone adequate to satisfy Due Process requirements. Indeed, since the Benonis' accident had not yet occurred, notice was quite impossible.

■ Count III rests partly on the Order approving sale which (in ¶ 5 thereof) authorized sale under § 363(f) of the Bankruptcy Code, Title 11 U.S.C., to be "free and clear of any and all liens, claims and encumbrances . . . shall attach to the proceeds of sale." Plaintiffs' reliance on that language, which in turn relied on § 363(f), is obviously misplaced. Section 363(f) permits *assets* to be freed from liens, claims, and encumbrances for purpose of selling those assets cleansed of such burdens and transferring them to the sale proceeds. *Zerand–Bernal*, 23 F.3d at 163. Thus, the statute and its invocation in the sale order in no way protects the buyer from current or future product liability; it only protects the purchased assets from lien claims against those assets. *In re Fairchild Aircraft Corp.*, 184 B.R. 910, 918 ˙Bankr. W.D.Tex.1995) (Section 363(f) only authorizes sales free and clear of interests in the property; it does not impact on asset purchaser's potential successor liability).

■ Paragraph Q of the sale order is also relied on. That provision reflected the contractual agreement between buyer and seller that the purchaser was not successor in interest to Debtors. This provision must be read in conjunction with what this Court could properly do under the Fifth Amendment, and what was actually done through the confirmed Plan. The Plan was directed at forcing existing pre-confirmation personal injury claimants to bring such claims against estate assets, and it forced those claims into a mediation procedure. That requirement was never intended to control future claimants such as Benonis, and indeed could not have done so under the Fifth Amendment and bankruptcy notice requirements. Only prior injured claimants were sent notice, and only they were bound by the injunctions issued upon confirmation. Benonis, not injured until long afterwards, was not.

■ Finally, § 105(a) does not grant authority enjoining Defendants' state court action.

■ Section 105(a) has been repeatedly held to empower the bankruptcy court "to enjoin parties other than the bankrupt from commencing or continuing litigation." *In re Pettibone Corp.*, 90 B.R. 918, 935 (Bankr. N.D.Ill.1988) (citing *A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins Co., Inc.)*, 788 F.2d 994, 1002 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986)). In particular, § 105(a) may be used to assure the orderly conduct of the reorganization proceedings. *Erti v. Paine Webber Jackson & Curtis, Inc. (In re Baldwin–United Corp. Litig.)*, 765 F.2d 343, 348 (2d Cir.

1985). The Seventh Circuit has held that a bankruptcy court may issue an injunction under § 105(a) when the court "is satisfied that such proceedings would defeat or impair its jurisdiction over the case before it." *Matter of L & S Indus., Inc.*, 989 F.2d 929, 932 (7th Cir.1993).

The continuation of Defendants' state court action will in no way impair bankruptcy court jurisdiction over the bankruptcy case. Injunctions under § 105(a) enjoining litigation "generally involve the debtor's principal officers, shareholders and directors." *Forty-Eight Insulations, Inc. v. Lipke (In re Forty-Eight Insulations, Inc.,)*, 54 B.R. 905, 909 (Bankr.N.D.Ill.1985). Allowing the Pennsylvania suit to continue against Plaintiffs will not jeopardize this reorganization, and nothing in the Adversary Complaint shows that it would. Plaintiffs argue that they will have an administrative claim against Debtors should the state court action succeed. However, they have not even joined the Debtor or its successors under the Plan to assert such a claim. Moreover, as earlier discussed, the contractual obligations of Debtors intended to protect the buyer from injury claims appear from the context to have applied to claims arising after sale but prior to confirmation a year later, but not to future accidents. Further, such an administrative claim, even if valid, would only serve to reduce the amount of money available for distribution to creditors. It would not jeopardize Debtors' chance for a successful Chapter 11 liquidation.

However broad § 105(a) may seem, it is not an infinite grant of authority. The Pennsylvania Action does not interfere with Debtors' ability to liquidate under Chapter 11, and Count III rests on an overly broad reading of the sale orders and complete disregard of rights of future injured persons to bankruptcy notice and Fifth Amendment process. The Plan confirmed here did not provide for future claims and reserved no assets to protect future injured persons. Treating this case and that Plan as if it did so is at best a misreading, or perhaps more accurately a wild stretch. Count III will be dismissed.

### Count IV

██ Count IV requests a new injunction pursuant to 11 U.S.C. § 362 permanently enjoining Defendants' state court action as well as permanently enjoining Defendants from taking any other action against Plaintiffs. Plaintiffs' theory under Count IV is that, without such an injunction, they will be required to seek recovery from the bankruptcy estate of any judgment as well as fees, costs, and expenses incurred in defending the state court action.

Section 362 provides for a automatic stay upon filing in bankruptcy of a variety of actions against a debtor, debtor's property, or the bankruptcy estate. 11 U.S.C. § 362. It automatically stays certain actions, but does not provide for issuance of a new injunction. Moreover, § 362 does not by its terms stay actions against non-debtors. Upon Plan confirmation in Chapter 11, it is replaced by a new statutory injunction against collection of claims except as permitted by the Plan. 11 U.S.C. § 524. Count IV will therefore be dismissed for failure to state a cause of action or basis for relief. Section 362 does not by its terms provide authority for entry of new injunctions to protect non-debtors.

### Count V

██ Count V requests a new injunction pursuant to the courts' retained powers under Fed. R. Bankr.P. 3020(d). Rule 3020(d) provides that, "Notwithstanding the entry of the order of confirmation, the court may issue any other order necessary to administer the estate." Fed. R. Bankr.P. 3020(d).

However, Rule 3020(d) does not give the court the authority to issue an injunction enjoining a personal injury action against an asset purchaser. Rather, this Rule "clarifies the authority of the court to conclude matters pending before it prior to confirmation and to continue to administer the estate as necessary, e.g., resolving objections to claims." Fed. R. Bankr.P. 3020, Advisory Committee Notes. The Rule can also be read in conjunction with 11 U.S.C. § 105(a), and the foregoing discussion of authority thereunder to protect the bankruptcy estate, to include authority to protect execution of the Plan or distribution of the estate. But

this is not what Plaintiffs seek, and their reliance on Rule 3020(d) is misplaced. Count V will be dismissed for failure to state a claim upon which relief can be granted.

### Count VI

 In Count VI, Plaintiffs request a permanent injunction, claiming that Defendants' actions allegedly violate the injunctions issued pursuant to the Plan and Confirmation Order, violate the Asset Purchase Agreement, Assumption Agreement, and Sale Order, and interfere with the administration of the estate. In addition, Plaintiffs argue that they have no adequate remedy at law. Essentially, they seek a new injunction to enforce the injunctive rights they asserted in earlier counts that they already have, and so they want a new injunction to enforce the old injunction.

A court must consider four traditional criteria in deciding whether to grant injunctive relief: (1) whether the plaintiff has a reasonable likelihood of success on the merits; (2) whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue; (3) whether the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant; and (4) whether the granting of the injunction will harm the public interest. *Plummer v. American Inst. of Certified Public Accountants*, 97 F.3d 220, 229 (7th Cir. 1996) (citing *N.L.R.B. v. Electro–Voice, Inc.*, 83 F.3d 1559, 1567 (7th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 683, 136 L.Ed.2d 608 (1997); *Faheem–El v. Klincar*, 841 F.2d 712, 716 (7th Cir.1988)). However, where a party seeks a permanent injunction, the first factor is no longer whether the plaintiff has demonstrated a reasonable likelihood of success on the merits, but whether plaintiff can show that it will succeed on the merits. *Id.* (citing *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 1404 n. 12, 94 L.Ed.2d 542 (1987)).

The Adversary Complaint fails to state a cause of action sufficient for the imposition of any new injunction. While Plaintiffs argue that, without an injunction they might be susceptible to inconsistent judgments from other personal injury claimants, they have not shown that they have any chance to succeed on the merits. In addition, while Plaintiffs state they will be without an adequate remedy at law, they also state that if they are forced to defend the Pennsylvania Action they will seek recovery from Debtors. Whether they have the right to do so is a question not directly presented by the present case, and the Debtor's successor under the Plan was not even joined. However, for reasons earlier discussed, the Plan documents and orders relied on do not on their face support Plaintiffs against these Defendants, let alone a claim that the estate contractually indemnifies them against "future claimants" injured post-confirmation. Plaintiffs do not demonstrate any real chance of success at all.

Taking Plaintiffs' well-pleaded facts as true for purposes of the defense motion, Plaintiffs have not sufficiently stated a cause of action for an injunction. Count VI will be dismissed.

### CONCLUSION

As discussed, jurisdiction is very doubtful. Should it exist here, as both sides argue, then it is appropriate to consider whether the Complaint states or could be amended to state a cause of action or basis for relief. For reasons stated, the Complaint does not state and cannot be amended to state a cause of action based on the documents and orders pleaded which Plaintiffs have misread. Whether for the latter reason or on jurisdictional grounds, the Adversary Complaint and the Adversary proceeding must be dismissed with finality. Therefore, a separate order will be entered wherein Counts I through VI of the Adversary Complaint will be dismissed, and the Adversary proceeding itself will be finally dismissed with prejudice.

This ruling does not determine whether any of the Debtors protected by injunction through the Confirmation Order herein may come before this Court to seek enforcement thereof. They have not done so and are not even parties to this Adversary proceeding, so that question does not arise here. Nor does this Opinion decide another question not pre-

sented here, namely whether the Defendants could seek to file a late post-confirmation claim if they offer to comply with the same mediation procedures as other claimants must follow. *See In re Pettibone Corp.*, 151 B.R. 166, 174–75 (Bankr.N.D.Ill.1993) (tort creditor permitted to file late proof of claim seven years after the bar date and five years after confirmation). They have not sought to do so, so the question does not arise here.

Finally, this opinion was not intended to and has not ruled on questions over which this Court clearly lacks jurisdiction, namely, the state law issues and factual disputes between these parties in the Pennsylvania Action as to liability asserted there on a theory of successor liability.