ZERAND–BERNAL GROUP, INC., formerly known as Zerand Corporation, Plaintiff–Appellant,

v.

Ronald L. COX, Beth Anne Cox, Rockwell International Corp., and Rockwell Graphic Systems, Inc., Defendants–Appellees.

No. 93–3295.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 14, 1994.

Decided April 22, 1994.

Michael R. Levinson, Gus A. Paloian, Patrice A. Powers, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, Russell J. Ober, Jr. (argued), Patricia L. Dodge, Meyer, Unkovic & Scott, Pittsburgh, PA, for Zerand–Bernal Group, Inc.

Francis J. Carey, Balzarini, Carey & Watson, Pittsburgh, PA, for Ronald L. Cox, Beth Ann Cox.

David S. Curry, N. Neville Reid (argued), Mayer, Brown & Platt, Chicago, IL, Kenneth L. Salmon, Patrick M. Coyne, Katarincic & Salmon, Pittsburgh, PA, for Rockwell Intern. Corp., Rockwell Graphic Systems, Inc.

Jerome Wald, Tishler & Wald, Ltd., Chicago, IL, for Cary Metal Products, Inc.

Before POSNER, Chief Judge, CUDAHY, Circuit Judge, and McDADE, District Judge.*

POSNER, Chief Judge.

This appeal requires us to consider the power of a bankruptcy court to enjoin proceedings in other courts after the completion of the bankruptcy proceeding. In 1985 Cary Metal Products, Inc. filed a Chapter 11 bank-

---

* Hon. Joe Billy McDade of the Central District of Illinois.

ruptcy proceeding in the bankruptcy court in Chicago. As debtor in possession, Cary then negotiated the sale of its assets to Zerand–Bernal Group, Inc., as it is now known. The sale agreement recites that it is subject to the entry by the bankruptcy court of an order approving the sale "free and clear of any liens, claims or encumbrances of any sort or nature," "confirming all of the terms and conditions of this Agreement," and "reserv[ing in the bankruptcy court] jurisdiction with the power to enjoin .... any products liabilities claims arising prior to the Closing or relating to sales made by Debtor prior to the Closing." On December 23, 1985, the bankruptcy court entered an order approving the sale and "reserv[ing] jurisdiction to enforce the Agreement herein approved in accordance with its terms and conditions." Several months later, the debtor (Cary), jointly with a creditors' committee that included Rockwell Graphic Systems, Inc., filed a plan of reorganization. The plan provided for the complete liquidation of Cary and the creation of a trust fund from the proceeds of the sale of Cary's assets to Zerand, specified how the fund was to be allocated among the creditors, and stated that "the Court shall retain exclusive jurisdiction after confirmation ... to enforce the agreement concerning the sale of assets to Zerand." The bankruptcy court approved the plan on January 22, 1987. The transfer of assets pursuant to the sale agreement was completed shortly afterward and the Cary bankruptcy proceeding then became inactive, although it has never been formally dismissed.

Four and a half years later, Ronald Cox and his wife filed a diversity products liability suit against Cary, Zerand, Rockwell Graphic, and others in a federal district court in Pennsylvania. The suit alleges that in 1989 Mr. Cox had caught his hand in a machine that had been manufactured by Cary and sold by it to Cox's employer. Though Zerand had had nothing to do with the manufacture or sale of the machine— events that had taken place before the bankruptcy sale—the accident had occurred in Pennsylvania and Cox claimed that under the law of that state governing successor liability Zerand was liable for any defect in the Cary machine. *Simmers v. American Cyanamid Corp.*, 394 Pa.Super. 464, 576 A.2d 376, 386 (1990). Not content to defend in the Pennsylvania district court, Zerand filed an adversary complaint in the bankruptcy court in Chicago, seeking to reopen the Cary bankruptcy and asking that the Coxes be enjoined from proceeding against Zerand in Pennsylvania and that Rockwell Graphics be enjoined from filing a cross-claim against Zerand seeking indemnification should Rockwell be held liable to the Coxes for its role (the nature of which is unclear) in the accident. The ground for the relief sought was that the sale agreement between Cary and Zerand had provided for the enjoining of any products liability claims against Zerand that related to equipment sales which had occurred before the sale to it of Cary's assets. The bankruptcy court held that it lacked jurisdiction over the adversary proceeding instituted by Zerand, notwithstanding the reservation of jurisdiction in the orders approving the sale of assets and the plan of reorganization. The district court affirmed the dismissal of the proceeding.

■■■ The bankruptcy jurisdiction of the district courts (including therefore that of the bankruptcy courts, which exercise powers delegated to them by the district courts, 28 U.S.C. § 157(a), (b)) extends to "all civil proceedings arising under title 11 [of the U.S.Code], or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Taken at its full breadth, this language would allow the bankruptcy court to do what Zerand wants, since the adversary complaint that Zerand filed in the bankruptcy court relates to the bankruptcy sale at which it acquired Cary's assets and thereby exposed itself, it turns out, to the Coxes' suit. But the language should not be read so broadly. The reference to cases related to bankruptcy cases is primarily intended to encompass tort, contract, and other legal claims by and against the debtor, claims that, were it not for bankruptcy, would be ordinary standalone lawsuits between the debtor and others but that section 1334(b) allows to be forced into bankruptcy court so that all claims by and against the debtor can be determined in the same forum. *In re Xonics,* 813 F.2d 127, 131 (7th Cir.1987). A secondary purpose is

to force into the bankruptcy court suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate. *Id.; National Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705, 709 (7th Cir.1994); *In re Turner*, 724 F.2d 338, 341 (2d Cir.1983) (Friendly, J.). Once they are shoehorned into the bankruptcy court on the authority of section 1334(b), such suits can then be stayed by authority of section 105 of the Bankruptcy Code, 11 U.S.C. § 105, which complements the automatic stay provision of section 362 of the Code (applicable to suits against the debtor) by permitting the bankruptcy court to "issue any order ... that is necessary or appropriate to carry out the provisions of this title." *In re Energy Co-op, Inc.*, 886 F.2d 921, 929 (7th Cir.1989); *In re G.S.F. Corp.*, 938 F.2d 1467, 1474 (1st Cir.1991); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002–03 (4th Cir. 1986).

The Coxes' products liability suit is not of either character. It is, to begin with, a claim neither by nor against the debtor. For while it names the debtor as a defendant, the debtor (Cary) no longer exists, all its assets having been transferred to Zerand pursuant to the plan of reorganization. For the same reason, the suit cannot possibly affect the amount of property available for distribution to Cary's creditors; all of Cary's property has already been distributed to them.

■■■ So the products liability suit, and hence Zerand's adversary complaint, which is its mirror image, are not proceedings "related" to the Cary bankruptcy, within the meaning of section 1334. E.g., *In re Turner*, *supra*, 724 F.2d at 341; *In re Memorial Estates, Inc.*, 950 F.2d 1364, 1368 (7th Cir. 1991); *In re Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir.1990). The next question is whether they can be said to "arise under" the Bankruptcy Code—or "arise in" a bankruptcy proceeding, but that provision of section 1334(b) cannot possibly be applicable to this dispute between two nonparties to the bankruptcy proceeding. Its domain is limited to questions that arise during the bankruptcy proceeding and concern the administration of the bankrupt estate, such as whether to discharge a debtor. *In re Wol-*

*verine Radio Co.*, 930 F.2d 1132, 1144 (6th Cir.1991); 1 *Collier on Bankruptcy* ¶ 3.01(c)(v), at pp. 3–32 to 3–33 (15th ed., Lawrence P. King ed. 1993).

■■■ The fact that a claim has a distant federal origin does not confer "arising under" jurisdiction. *Gully v. First National Bank*, 299 U.S. 109, 118, 57 S.Ct. 96, 100, 81 L.Ed. 70 (1936); *McCall–Bey v. Franzen*, 777 F.2d 1178, 1185–86 (7th Cir.1985). Copyrights are granted under the authority of federal law and all could be said to originate in the Constitution and the copyright statute, but a dispute over the meaning or validity of an agreement to license a copyright is deemed to arise under state rather than federal law. *T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir.1964) (Friendly, J.). It is the same here. Bankruptcy is a system of entitlements (of both debtors and creditors) created by federal law, but a dispute over the meaning or validity of an agreement between the purchaser at a bankruptcy sale and some third party likewise arises under state rather than federal law. *In re Chicago, Rock Island & Pacific R.R.*, 794 F.2d 1182, 1188 (7th Cir. 1986); *In re Lemco Gypsum, Inc.*, *supra*, 910 F.2d at 789. "Otherwise anyone who could trace his title to a bankrupt could invoke federal jurisdiction to settle disputes affecting that property." *In re Xonics*, *supra*, 813 F.2d at 131. And why would that be bad? Because as a dispute becomes progressively more remote from the concerns of the body of federal law claimed to confer federal jurisdiction over it, the federal interest in furnishing the rule of decision for the dispute becomes progressively weaker. Here it is extremely weak. The bankruptcy is over and done with. The main dispute is one between a purchaser at the bankruptcy sale and a person who had nothing to do with the bankruptcy over a point of state law. There is a secondary dispute between that purchaser and a creditor of the bankrupt (Rockwell), but Rockwell's role as a creditor is incidental. The relation of these disputes to the bankruptcy is too tenuous to empower the bankruptcy court, through a capacious interpretation of the "arising under" jurisdiction, to adjudicate a tort suit to which the (former) debtor is not even a party, years after the

bankruptcy was wound up. *In re Edwards,* 962 F.2d 641, 643 (7th Cir.1992); *In re Suchy,* 786 F.2d 900, 902 (9th Cir.1985).

We said that the federal interest is tenuous, not that it is nonexistent. Zerand points out that the price received in a bankruptcy sale will be lower if a court is free to disregard a condition in the sale agreement enjoining claims against the purchaser based on the sellers' misconduct. If the condition is invalid the purchaser will be buying a pig in a poke, never knowing when its seller's customers may come out of the woodwork and bring suit against it under some theory of successor liability. This possibility will depress the price of the bankrupt's assets, to the prejudice of creditors. All this is true, but proves too much. It implies, what no one believes, *In re American Hardwoods, Inc.,* 885 F.2d 621, 624 (9th Cir.1989), that by virtue of the arising-under jurisdiction a bankruptcy court enjoys a blanket power to enjoin all future lawsuits against a buyer at a bankruptcy sale in order to maximize the sale price: more, that the court could in effect immunize such buyers from all state and federal laws that might reduce the value of the assets bought from the bankrupt; in effect, that it could discharge the debts of nondebtors (like Zerand) as well as of debtors even if the creditors did not consent; that it could allow the parties to bankruptcy sales to extinguish the rights of third parties, here future tort claimants, without notice to them or (as notice might well be infeasible) any consideration of their interests. If the court could do all these nice things the result would indeed be to make the property of bankrupts more valuable than other property—more valuable to the creditors, of course, but also to the debtor's shareholders and managers to the extent that the strategic position of the debtor in possession in a reorganization enables the debtor's owners and managers to benefit from bankruptcy. But the result would not only be harm to third parties, such as the Coxes, but also a further incentive to enter bankruptcy for reasons that have nothing to do with the purposes of bankruptcy law. Cf. Douglas G. Baird & Thomas H. Jackson, *Cases, Problems, and Materials on Bankruptcy* 48–55 (2d ed. 1990).

It is true that Cary's assets were sold to Zerand free from all liens and other encumbrances. And such a cleansing of the assets in the bankruptcy sale is a valid power of a bankruptcy court, 11 U.S.C. §§ 363(f), 1141(c). But the Coxes are not attempting to enforce a lien. *In re Mooney Aircraft, Inc.,* 730 F.2d 367, 374–75 (5th Cir.1984). It is also true that if, as in some asbestosis cases, unknown future product-liability tort creditors of the debtor, such as the Coxes, had been treated as claimants (or at least as parties in interest) in the Cary bankruptcy proceeding, provision would have been made for them there. *In re UNR Industries, Inc.,* 725 F.2d 1111, 1120 (7th Cir.1984); *Kane v. Johns–Manville Corp.,* 843 F.2d 636, 639–40 (2d Cir.1988); *In re Amatex Corp.,* 755 F.2d 1034, 1041 (3d Cir.1985). Even then, the Coxes would not have been *enjoined* from suing Zerand; discharge operates as an injunction, but only against suing the debtor; the statute is explicit on this point, 11 U.S.C. § 524(e), though the Fourth Circuit has read in an exception (inapplicable here) for suits against guarantors of the debtor's debts when the plan of reorganization provides for the discharge of those debts. *In re A.H. Robins, Inc.,* 880 F.2d 694, 702 (4th Cir. 1989). Had the Coxes been parties to the bankruptcy proceeding, they would have had no possible basis for a suit against Zerand. But that is not because the bankruptcy court could and would enjoin such a suit; it is because the successorship doctrine on which they rely is inapplicable if the plaintiff had a chance to obtain a legal remedy against the predecessor, even so limited a remedy as that afforded by the filing of a claim in bankruptcy. *Conway v. White Trucks,* 885 F.2d 90, 96 (3d Cir.1989) (interpreting Pennsylvania law). The Coxes did not have any such chance, since the accident occurred after the bankruptcy proceeding had wound up. But if they did, still Zerand would have to interpose its defense in the Pennsylvania suit. It could not go to the bankruptcy court for relief.

If as we believe Zerand is wrong in arguing that any proceeding, such as its adversary proceeding to block the Coxes'

suit, that protects and enhances the value of the assets purchased at the bankruptcy sale invokes federal bankruptcy jurisdiction, the fact that the bankruptcy court, in the orders approving the bankruptcy sale and later in the plan of reorganization, purported expressly to assume jurisdiction to entertain such proceedings could not confer jurisdiction. A court cannot write its own jurisdictional ticket. Nor are we much impressed by the argument that if the provision in the bankruptcy-sale agreement purporting to enjoin products liability claims goes down the drain (as well it may if the issue is confided to the district court in Pennsylvania for decision in accordance with state law), Zerand will seek to rescind the agreement, thus ripping the bankruptcy open; this proves, it argues, that its adversary proceeding really is based on federal law. As we do not see how Zerand can rescind the sale agreement, we need not consider the larger question, on which the courts are divided, whether a suit that might trigger a related suit (a suit to rescind a bankruptcy sale would be a related suit) is itself therefore a "related" action within the meaning of section 1334(b). See *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994–96 (3d Cir.1984); *In re G.S.F. Corp., supra,* 938 F.2d at 1474–76; *In re Wolverine Radio Co., supra,* 930 F.2d at 1142–43. An attack on a sale agreement that is the core and premise of a plan of reorganization is an attack on the plan itself, because the sale could not be undone without rescinding the plan, and an order confirming a plan becomes irrevocable (barring fraud) 180 days after its entry, 11 U.S.C. § 1144—which is years before Zerand filed its adversary complaint. So the threatened rescission suit is no threat at all, *In re Roberts Farms, Inc.,* 652 F.2d 793, 797 (9th Cir.1981); see also *In re UNR Industries, Inc.,* 20 F.3d 766, 769–70 (7th Cir.1994); *In re Chateaugay Corp.,* 10 F.3d 944, 952–53 (2d Cir.1993); *In re Public Service Co.,* 963 F.2d 469 (1st Cir.1992), and thus no basis for deeming the suit that Zerand has brought related to the bankruptcy proceeding.

Zerand does not suggest that the district court in Chicago (as distinct from the bankruptcy court) could maintain jurisdiction over its suit on some ground besides bankruptcy

jurisdiction. The suit was therefore properly dismissed.

AFFIRMED.