**In re Hilton L. STEIN and Hilton L. Stein, L.L.C., Debtors.**

No. CIV. 03–5162(FSH).

United States District Court,
D. New Jersey.

May 12, 2004.

Diane M. Acciavatti, Totowa, NJ, for Appellants.

Richard B. Honig, John Alan Adler, Hellring, Lindeman, Goldstein & Siegal, Esqs., Donald Francis Mac Master, Office of the U.S. Trustee, Newark, NJ, Andre L. Kydala, Law Office of Andre L. Kydala, Clinton, NJ, for Appellees.

James J. Waldron, Clerk, Newark, NJ, for Other Party Name.

### OPINION & ORDER

HOCHBERG, District Judge.

In this case, this Court determines whether the United States Bankruptcy

Court properly exercised subject matter jurisdiction in an order which precluded certain Chapter 7 creditors (the "Roper parties") from pursuing state law causes of action against a non-debtor.

This is an appeal from the Bankruptcy Court's Order, dated September 4, 2003, denying the Roper parties' Motion for Reconsideration of an Order entered on July 2, 2003, which required, *inter alia,* the discharge of a *lis pendens* against property located at 15 Harrison Road, Kinnelon, New Jersey (the "Kinnelon property"), a dismissal of the state court action filed in Morris County (the "Morris County action"), which alleges preferential and fraudulent conveyances against the non-debtor Karen Stein ("Mrs. Stein") relating to the Kinnelon property and the property located in Lavalette, New Jersey (the "Lavalette property").

## BACKGROUND

In June 2002, Hilton L. Stein (the "Debtor") sought relief under Chapter 11 of the United States Bankruptcy Code. Subsequently, the Chapter 11 case was converted to a Chapter 7 case, and the United States Trustee appointed Richard B. Honig (the "Trustee") as the Chapter 7 Trustee. The Roper parties are former law partners of the Debtor.

With regard to the Lavalette property, which had been purchased by Mrs. Stein and her parents and were titled under their names only, the Trustee, after having conducted extensive discovery of the Debtor's financial affairs, concluded that the Debtor had no right, title or interest in the Lavalette property. In March 2003, the Bankruptcy Court granted Mrs. Stein's motion to compel the Trustee's abandonment of any interest in the Lavalette prop-

erty. The Roper parties did not appeal that decision.

The Trustee, however, did not abandon a claim for entitlement to, or interest in, the Kinnelon property, which was titled in the name of Mrs. Stein only. The Trustee maintained that the Debtor's estate had an equitable interest in the Kinnelon property. After the Trustee had conducted extensive discovery, the Trustee and Mrs. Stein entered into a settlement whereby the Kinnelon property was to be sold to a third-party, and the proceeds from that sale, after payment of the mortgage, commissions and closing costs, would be shared equally between the Debtor's estate and Mrs. Stein. In exchange, the Trustee agreed to release Mrs. Stein from any claims against her for preferential or fraudulent transfers from the Debtor's estate.

In May 2003, the Trustee sought from the Bankruptcy Court approval of the proposed settlement with regard to the Kinnelon property. Notice of the settlement was sent to all creditors, including the Roper parties. The notice of settlement stated that the Trustee proposed to settle all claims and controversies against Mrs. Stein related to the Debtor's equitable interest in the Kinnelon property and claims for preferential and fraudulent transfers. No creditors, including the Roper parties, objected to the terms of the settlement. The Bankruptcy Court entered an order, dated June 2, 2003, approving the settlement. The June 2, 2003 order was not appealed.[1]

Thereafter, the Roper parties filed a complaint in state court and a *lis pendens,* which had the effect of legally stopping the sale of the Kinnelon property. The Morris County action alleges preferential and fraudulent transfers of the Debtor's assets

---

1. On June 20, 2003, the Roper parties filed a motion to vacate the June 2, 2003 order on grounds of conflict. That motion was denied on July 15, 2003.

and seeks from Mrs. Stein and her parents approximately $130,000 to $143,000, including an equitable mortgage and constructive trust.

In June 2003, the Debtor moved to enforce the settlement between the Trustee and Mrs. Stein by seeking, *inter alia*, the dismissal of the Morris County action, the discharge of the *lis pendens* filed against the Kinnelon property, and the determination that all fraudulent conveyance actions pending against Mrs. Stein be brought before the Bankruptcy Court. On July 2, 2003, the Bankruptcy Court granted the Debtor's motion.

The Roper parties moved for reconsideration, which the Bankruptcy Court denied on September 4, 2003. The Roper parties then sought from this Court a stay before the Bankruptcy Court to escrow proceeds from the sale of the Kinnelon property. This Court ruled that no irreparable harm was shown and denied relief. The instant matter is an appeal by the Roper parties of the Bankruptcy Court's September 4, 2003 decision on the basis that the denial of their motion for reconsideration was procedurally and substantively flawed.

## LEGAL STANDARD

### Standard of Review

■ A district court may disturb a bankruptcy court's factual findings only if they are clearly erroneous. *See In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir.1989). A factual finding is clearly erroneous if it is either "completely devoid of minimum evidentiary support displaying some hue of credibility or ... bears no rational relationship to the supportive evidentiary data." *Krasnov v. Dinan*, 465 F.2d 1298, 1302–03 (3d Cir.1972).

■ Legal conclusions of the bankruptcy court, however, are subject to plenary review by the district court. *See* Fed. R. Bankr.P. 8013; *In re DeSeno*, 17

F.3d 642, 643 (3d Cir.1994), *J.P. Fyfe, Inc. v. Bradco Supply Corp.*, 891 F.2d 66, 69 (3d Cir.1989). Where mixed questions of law and fact are presented, the district court must apply the appropriate standard to each component. *In re Sharon Steel Corp.*, 871 F.2d at 1222. The district court must give conclusive effect to exercises of discretion by the bankruptcy court unless such an exercise constitutes an abuse of discretion. *See In re Vertientes, Ltd.*, 845 F.2d 57, 59 (3d Cir.1988).

### Subject Matter Jurisdiction of the Bankruptcy Court

■ The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). Title 28 U.S.C. § 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." The district courts may, in turn, refer "any or all proceedings arising under title 11 or arising in or related to a case under title 11 ... to the bankruptcy judges for the district." 28 U.S.C. § 157(a). Here, the Bankruptcy Court's jurisdiction to enjoin the Roper parties' Morris County action is based on the "arising under," "arising in," or "related to" language of §§ 1334(b) and 157(a).

■ Congress did not delineate the scope of "related to" jurisdiction, but its choice of words suggests a grant of some breadth. *Celotex*, 514 U.S. at 308, 115 S.Ct. 1493. In *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir.1984), the Third Circuit found that "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate."

*Id.,* at 994; *see also* H.R.Rep. No. 95–595, pp. 43–48 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6004–6009. Moreover, the "related to" language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simply proceedings involving the property of the debtor or the estate. *Celotex,* 514 U.S. at 308, 115 S.Ct. 1493. However, a bankruptcy court's "related to" jurisdiction cannot be limitless. *See Pacor,* 743 F.2d at 994; *cf. Board of Governors, FRS v. MCorp Financial, Inc.,* 502 U.S. 32, 40, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991) (stating that Congress has vested "limited authority" in bankruptcy courts).

■ Proceedings "related to" the bankruptcy include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate. *Celotex,* 514 U.S. at 308, 115 S.Ct. 1493 (*citing* 1 Collier on Bankruptcy P3.01[1]c[iv], pp. 3–28 (15th ed.1994)). The first type of "related to" proceeding involves a claim like the state-law breach of contract action at issue in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The instant case, however, involves the second type of "related to" proceeding.

■ In *Pacor,* the Third circuit devised the following test for determining the existence of "related to" jurisdiction: "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. . . .* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Pacor,* 743 F.2d at 994 (emphasis in original; citations omitted). In essence, the test to determine if in the instant case the Bankruptcy Court properly exercised jurisdiction is whether the proceeding at issue has any effect on the estate of the Debtor. *See Celotex,* 514 U.S. at 308, 115 S.Ct. 1493.

## DISCUSSION

■ In reviewing the Bankruptcy Court's factual findings, this Court finds that the Bankruptcy Court judge thoroughly and accurately considered the facts before him, including those facts provided to him by the Trustee, who had conducted extensive due diligence into the financial affairs of the Debtor's estate. Having found that the Bankruptcy Court's factual findings satisfied the clearly erroneous standard of review, this Court now turns to the Bankruptcy Court's legal conclusions.

In its examination of the record and the law, this Court has determined that the Morris County action would have an effect on the Debtor's estate, and therefore is "related to" the proceedings in the Bankruptcy Court. The Debtor's estate, represented by the Trustee, acquires a fifty-percent interest in the Kinnelon estate pursuant to the terms of settlement between the Trustee and Mrs. Stein. The Roper parties, who had sought without success to lay claim to the entire proceeds from the sale of the Kinnelon, have commenced state court proceedings based on claims of preferential and fraudulent transfers—identical to those previously alleged in the Bankruptcy Court proceedings—to pursue the remaining fifty per-

cent of the Kinnelon sale proceeds. The Morris County action is an attempt to circumvent bankruptcy proceedings, the results of which were adverse to the Roper parties. A successful action in state court would effectively disturb the terms of the settlement between the Trustee and Mrs. Stein, in which the Trustee, in consideration for a fifty-percent proceeds from the Kinnelon property, agreed to release Mrs. Stein from any claims against her for preferential or fraudulent transfers from the Debtor's estate. The possibility of disturbing the Trustee's settlement and overriding the Bankruptcy Court's approval of the settlement constitutes an effect on the Debtor's estate and therefore is "related to" the bankruptcy proceedings.

■ Although the Roper parties acknowledged the Trustee's exclusive authority to bring claims on behalf of the creditors and the Bankruptcy Court's jurisdiction to permit enforcement of the Trustee's actions, they subsequently asserted that their claims constitute personal claims against the assets of Mrs. Stein. Pursuant to 11 U.S.C. §§ 323 and 544(b), the Trustee is conferred with the authority to represent *all* creditors and the Debtor's estate and with the sole responsibility of bringing actions on behalf of the Debtor's estate to marshal assets for the estate's creditors. *Fisher v. Apostolou,* 155 F.3d 876, 879 (7th Cir.1998); *Matter of Perkins,* 902 F.2d 1254, 1257 (7th Cir.1990); *Koch Refining v. Farmers Union Cent. Exchange, Inc.,* 831 F.2d 1339, 1342–1343 (7th Cir.1987).

■ The Trustee is the only party who can sue to represent the interests of the creditors as a class. *Fisher,* 155 F.3d at 879. As general creditors, the Roper parties may not metamorphose into personal creditors upon their dissatisfaction with an outcome of the bankruptcy proceedings; otherwise, any unhappy creditor may race to the courthouse, *see Celotex,* 514 U.S. at 310, 115 S.Ct. 1493; *Fisher,* 155 F.3d at 883, thus, giving rise to the issue of who would be bound by inconsistent results. *See St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.,* 884 F.2d 688, 700–01 (2d Cir.1989).

More specifically, the Trustee has the right to sue parties for recovery of all property available under state law, such as the fraudulent conveyance claims in the instant case. *See Koch,* 831 F.2d at 1343. Even assuming *arguendo* that the Morris County action constitutes stand-alone state claims for fraudulent conveyance, the Roper parties may not independently pursue such a claim in state court. *See Flip Mortgage Corp. v. McElhone,* 841 F.2d 531 (4th Cir.1988)(action for recovery of assets as a fraudulent conveyance was for the trustee to prosecute, not creditor injured by the fraudulent conveyance). In the instant case, however, the identical issues of fraudulent conveyance were raised and subsequently resolved in the Bankruptcy Court. The Trustee entered into settlement with regard to the Kinnelon property and abandoned his claim in the Lavalette property; the Bankruptcy Court approved the Trustee's actions; the Roper parties did not object or appeal. This Court finds no credible support for the Roper parties' contention that their state action involves claims independent and different from the fraudulent conveyance claims, i.e., preferential and fraudulent transfers from the Debtor's estate, already made and adjudicated in the Bankruptcy Court.

■ Having determined that the Bankruptcy Court possesses "related to" jurisdiction over the Morris County action, including the *lis pendens* filed by the Roper parties, this Court finds that the Bankruptcy Court's jurisdiction extends as well to "suits to which the debtor need not be a party but which may affect the amount of

property in the bankrupt estate." *Ze-rand–Bernal Group, Inc. v. Cox,* 23 F.3d 159, 161–62 (7th Cir.1994). The Bankruptcy Court, to properly exercise its jurisdictional powers, "may issue any order, process, or judgment that is necessary or appropriate," *id.,* at 162, including enjoining proceedings in other courts if such proceedings may defeat or impair its jurisdiction over the case before it. *Matter of L & S Industries, Inc.,* 989 F.2d 929, 932 (7th Cir.1993). Under plenary review, this Court is satisfied that the Bankruptcy Court's actions to preserve its jurisdiction over the bankruptcy proceeding are consistent with established legal principles.

Accordingly, **IT IS** on this 12th day of May 2004, hereby

**ORDERED** that the Bankruptcy Court's September 4, 2004 Order Denying Reconsideration is **AFFIRMED;** and it is further

**ORDERED** that this case be **CLOSED.**