PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

VALLEY HISTORIC LIMITED
PARTNERSHIP,
            *Plaintiff-Appellant,*

v.

THE BANK OF NEW YORK,
            *Defendant-Appellee.*

No. 06-1571

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(1:05-cv-01268-GBL-LO; BK-05-01362)

Argued: March 13, 2007

Decided: May 17, 2007

Before SHEDD and DUNCAN, Circuit Judges, and
Samuel G. WILSON, United States District Judge for the
Western District of Virginia, sitting by designation.

---

Affirmed in part, vacated in part, and remanded with instructions by
published opinion. Judge Wilson wrote the opinion, in which Judge
Shedd and Judge Duncan joined.

---

## COUNSEL

**ARGUED:** Steven Bret Ramsdell, TYLER, BARTL, GORMAN &
RAMSDELL, P.L.C., Alexandria, Virginia, for Appellant. Benjamin
C. Ackerly, Sr., HUNTON & WILLIAMS, Richmond, Virginia, for

Appellee. **ON BRIEF:** Thomas P. Gorman, TYLER, BARTL, GOR-MAN & RAMSDELL, P.L.C., Alexandria, Virginia, for Appellant. Michael C. Shepherd, HUNTON & WILLIAMS, Richmond, Virginia, for Appellee.

## OPINION

WILSON, District Judge:

This is an appeal by appellant, Chapter 11 debtor, Valley Historic Limited Partnership ("Debtor"), from the district court's determination that the bankruptcy court lacked jurisdiction over the Debtor's post-confirmation adversary proceeding against appellee, the Bank of New York ("Bank"), for breach of contract and for tortious interference. We affirm the district court's determination that the bankruptcy court lacked jurisdiction.

### I.

In May 1992, Valley Historic Properties, Inc. ("Borrower") acquired two office buildings in downtown Staunton, Virginia. The Borrower financed the acquisition and renovation of the buildings through the issuance of economic development bonds. First Vantage Bank, First Virginia Bank, Inc., and First Bank & Trust Co. owned the beneficial interest in the bonds. The bonds were payable solely from revenues derived from payments under a loan agreement and promissory note, which were ultimately assigned to the Bank as successor indenture trustee. The loan agreement, which was secured by a first priority lien on the property and an assignment of leases, rents, and profits, called for scheduled payments over a ten-year period, with all payments to have been completed by May 2002. Lease payments, under a ten-year lease of the property by a single tenant, Valley Community Services Board, provided the Borrower the source of funds to make the monthly payments to the Bank that the loan agreement required. Following the execution of the loan agreement and the issuance of the bonds, the Borrower conveyed its interest in the property to the Debtor.

In mid-2001, the Bank apprised the Debtor that the loan agreement required the Debtor to increase its monthly payments nearly tenfold to $100,000 per month for the period of May 2001 through May 2002 so that the loan would be paid fully, rather than simply mature, in May 2002. The Debtor disagreed and continued to pay at the same rate it had in the past. Consequently, in February 2002 the Bank issued a notice of default, and the Debtor responded by filing its Chapter 11 bankruptcy petition that same month.

The Debtor filed a plan of reorganization ("Plan") on September 20, 2002. The Bank objected to the Plan and filed a proof of claim in the amount of $1,051,866.43, to which the Debtor objected. The bankruptcy court ultimately confirmed the Plan on December 30, 2003, granting the Bank an allowed secured claim in the amount of $967,148.17. The Plan provided, in part, that the court would fix and liquidate the amount of the Bank's claim "subject to the Debtor's claims, setoffs, etc. which [would] be liquidated at another date via an adversary proceeding" and that the bankruptcy court would "retain jurisdiction" over the "adversary proceeding filed by the Debtor against [the Bank]." The Plan did not provide for the use of any recovery from the adversary proceeding but instead provided for the satisfaction of the Debtor's obligations "entirely from the post-petition rents and earnings of the Debtor through the operation of its real estate."

After confirmation, the tenant vacated the Debtor's property, and the Debtor sold that property on March 1, 2005, and used the proceeds to pay *all* of its creditors, including the Bank. Approximately three months later, the Debtor filed an adversary proceeding raising two claims against the Bank. In Count I, the Debtor alleged that the Bank breached the loan agreement when it increased the monthly lease payments and declared the Debtor to be in default. In Count II, the Debtor alleged that the Bank and the three beneficial owners of the bonds tortiously interfered with the Debtor's contractual relationship with its tenant in December 2002 by meeting with the tenant and offering to sell the property to the tenant below fair market value.

The Bank moved to dismiss on the grounds that the bankruptcy court lacked subject matter jurisdiction, that the proceeding was not a core proceeding, and that the Debtor's complaint failed to state a

claim upon which relief could be granted. The bankruptcy court held that it had jurisdiction, that the proceeding was a core proceeding, and that the Debtor's complaint stated valid claims. The Bank took an interlocutory appeal pursuant to 28 U.S.C. § 158(a)(3), and the district court reversed. The district court found no "related to" jurisdiction over Count I, the pre-petition contract claim, because the Debtor's plan of reorganization had been confirmed and substantially consummated by the time the Debtor filed the complaint. It found no "arising in" jurisdiction over Count II, the post-petition tortious interference claim, because, according to our precedent, "proceedings or claims arising in Title 11 are those that 'are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy.'" *Grausz v. Englander*, 321 F.3d 467, 471 (4th Cir. 2003) (quoting *Bergstrom v. Dalkon Shield Claimants Trust* (*In re A. H. Robins Co.*), 86 F.3d 364, 372 (4th Cir. 1996)). It also found that neither Count I nor Count II was a core proceeding and that because there was no privity between the Debtor and the Bank, Count I failed to state a claim upon which relief could be granted.

## II.

Because the district court sits as an appellate court in bankruptcy, our review of the district court's decision is plenary. *See Bowers v. Atlanta Motor Speedway, Inc.* (*In re Se. Hotel Props. Ltd.*), 99 F.3d 151, 154 (4th Cir. 1996). Therefore, we review the district court's decision "by applying the same standard of review that it applied to the bankruptcy court's decision. That is, we review findings of fact for clear error and conclusions of law de novo." *Kielisch v. Educ. Credit Mgmt. Corp.* (*In re Kielisch*), 258 F.3d 315, 319 (4th Cir. 2001) (citations omitted).

## III.

The bankruptcy court derives its jurisdiction from the district court. *See* 28 U.S.C. § 157(a), (b)(1). District courts have "original and exclusive jurisdiction of all cases under title 11," and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a), (b). The Debtor maintains that the bankruptcy court had both "arising in" and "related to" jurisdiction over its post-confirmation adversary pro-

ceeding against the Bank as well as jurisdiction to adjudicate its claims under 28 U.S.C. § 1334(e), which gives the district court in a case under Title 11 exclusive jurisdiction over a debtor's property "as of the commencement" of the case and "of property of the estate." Additionally, it maintains that the confirmation order, which reserved jurisdiction over the Debtor's adversary proceeding, is preclusive and bars the Bank from relitigating the bankruptcy court's jurisdiction. We conclude, however, as did the district court, that the bankruptcy court did not have post-confirmation jurisdiction to adjudicate the Debtor's claims.

A proceeding or claim "arising in" Title 11 is one that is "'not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy.'" *Grausz v. Englander*, 321 F.3d 467, 471 (4th Cir. 2003) (quoting *Bergstrom v. Dalkon Shield Claimants Trust* (*In re A.H. Robins Co.*), 86 F.3d 364, 372 (4th Cir. 1996)). Therefore, a "'controversy arises in Title 11' when 'it would have no practical existence *but for* the bankruptcy.'" *Id.* (quoting *Bergstrom*, 86 F.3d at 372). The Debtor argues that there is "arising in" jurisdiction under § 1334(b) because the breach of contract caused its bankruptcy and the tortious interference complicated the administration of the bankruptcy case. We do not find the argument persuasive.

It seems self-evident that a claim, like the Debtor's breach of contract claim, that pre-dates the filing of the Chapter 11 case cannot be said to have arisen within that case, and whether it caused the bankruptcy is immaterial. Indeed, if causation were a sufficient touchstone, then any debt would confer "arising in" jurisdiction. However, the very purpose of bankruptcy is to discharge or restructure the debt that has caused the bankruptcy. Nor is it sufficient to establish "arising in" jurisdiction that a claim, like the Debtor's tortious interference claim, arises *during* the pendency of the Chapter 11. Here, the Debtor's claims bear only a coincidental relationship to the Debtor's bankruptcy case. They would have existed whether or not the Debtor filed bankruptcy. It follows that because the Debtor's breach of contract claim and tortious interference claim would have existence outside of the bankruptcy, they were not within the bankruptcy court's "arising in" jurisdiction.

The Debtor also asserts that the bankruptcy court had subject matter jurisdiction because his claims are "related to" a case under Title 11. This Court, like the majority of the other circuits, has adopted the test articulated by the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), for determining "related to" jurisdiction. *See A. H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002 n.11 (4th Cir. 1986).[1] In short, "'the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" Owens-Ill., Inc. v. Rapid Am. Corp.* (*In re Celotex Corp.*), 124 F.3d 619, 625 (4th Cir. 1997) (quoting *Pacor*, 743 F.2d at 994). Therefore, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and [it] in any way impacts upon the handling and administration of the bankruptcy estate." *Id.* at 625-26; *see also Spartan Mills v. Bank of Am. Ill.*, 112 F.3d 1251, 1255-56 (4th Cir. 1997).

*Pacor* was decided in a pre-confirmation context, however, and the Third Circuit has since examined "related to" jurisdiction from a somewhat different analytical perspective, in a post-confirmation context. Recognizing that "[c]ourts have applied varying standards to determine whether 'related to' jurisdiction should be upheld post-confirmation," it endeavored to distill the "essential inquiry" or common thread throughout the decisions, including our decision in *Bergstrom. Binder v. Price Waterhouse & Co.* (*In re Resorts Int'l, Inc.*), 372 F.3d 154, 166 (3d Cir. 2004). In its view, "the essential inquiry appears to be whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." *Id.* at 166-67. According to the court, for "related to" jurisdiction to exist at "the post-confirmation stage, the claim must affect an integral aspect of the bankruptcy process — there must be a close nexus to the bankruptcy plan or proceeding." *Id.* at 167. Practically speaking, under this inquiry "[m]atters that affect the interpre-

---

[1]Although the Supreme Court has overturned *Pacor* in part, *see Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995) (overruling *Pacor*'s holding that the prohibition against review of a remand order in 28 U.S.C. § 1447(d) is not applicable in a bankruptcy case), the Court has not disturbed *Pacor*'s "related to" jurisdictional test.

tation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Id.*

We find the Third Circuit's "close nexus" requirement to be a logical corollary of "related to" jurisdiction. Analytically, it insures that the proceeding serves a bankruptcy administration purpose on the date the bankruptcy court exercises that jurisdiction. Without such a purpose, "related to" jurisdiction would extend beyond the limited jurisdiction conferred upon bankruptcy courts in the post-confirmation context. *See In re Resorts Int'l, Inc.*, 372 F.3d at 164-69. Moreover, although we agree with the Third Circuit that under this inquiry that "[m]atters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus," we do not find the facts and circumstances here to be typical. We find no conceivable bankruptcy administration purpose to be served by the Debtor's adversary proceeding because the Plan made no provision for the use of any recovery from the adversary proceeding but instead provided for the satisfaction of the Debtor's obligations "entirely from the post-petition rents and earnings of the Debtor through the operation of its real estate." Here, the Debtor had paid all its creditors, including the Bank before instituting the adversary proceeding, and the Plan was substantially consummated.

Despite there being no conceivable bankruptcy administration purpose in providing a forum for this dispute, the Debtor essentially argues that it was proper for the bankruptcy court to exercise jurisdiction pursuant to the Plan's retention of jurisdiction provision. However, neither the parties nor the bankruptcy court can create § 1334 jurisdiction by simply inserting a retention of jurisdiction provision in a plan of reorganization if jurisdiction otherwise is lacking, as it is here. *See New Horizon of N.Y., L.L.C. v. Jacobs*, 231 F.3d 143, 155 (4th Cir. 2000) ("The plan cannot confer jurisdiction upon a bankruptcy court or a federal district court . . ., rather 28 U.S.C. § 1334 governs jurisdiction.") (citations omitted); *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 164 (7th Cir. 1994) (concluding that the bankruptcy court lacked jurisdiction post-confirmation to adjudicate an adversary proceeding concerning a bankruptcy sale, notwithstanding inclusion of language purporting to retain jurisdiction in the order

confirming the sale and in the plan of reorganization). Simply put, the Debtor cannot "write its own jurisdictional ticket." *Id.*

The Debtor also argues that even if this court does not have "arising in" or "related to" jurisdiction under § 1334(b), it has subject matter jurisdiction to hear the Debtor's adversary proceeding under § 1334(e), which gives the district court in a case under Title 11 exclusive jurisdiction over a debtor's property "as of the commencement" of the case and over "property of the estate." We disagree.

The Debtor is viewing two conceptually distinct jurisdictional grants as if they are the same and ignoring the effect of confirmation. 28 U.S.C. § 1334(b) invests district courts with original but not exclusive jurisdiction over "civil proceedings." In contrast, § 1334(e) is a broad grant of exclusive jurisdiction over a debtor's property; it does not invest district courts with jurisdiction to conduct civil proceedings. Instead, in the context of a Chapter 11 proceeding in connection with other provisions of Title 11, it creates exclusive jurisdiction over "property" for a limited period of time — until confirmation and the property vests in the reorganized debtor. 11 U.S.C. § 1141(b) ("Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.").

Here, neither the Plan nor the order confirming the Plan provided that the breach of contract claim or the tortious interference claim would remain property of the bankruptcy estate following the confirmation of the Plan. Consequently, upon Plan confirmation, the claims vested in the reorganized Debtor and could no longer be considered "property of the estate" under § 1334(e). *See Still v. Rossville Bank* (*In re Chattanooga Wholesale Antiques, Inc.*), 930 F.2d 458, 462 (6th Cir. 1991); *Carter v. Peoples Bank & Trust Co.* (*In re BNW, Inc.*), 201 B.R. 838, 848-49 (Bankr. S.D. Ala. 1996) (noting that "upon confirmation, all property of the estate vests in the Debtor (the reorganized one) 'except as otherwise provided in the plan or order confirming the plan' . . . [so that] the property is no longer 'property of the estate' which is subject to bankruptcy jurisdiction") (citations omitted). However, even if the contract and tortious interference claims had remained in the bankruptcy estate post-confirmation, the Debtor would still have had to establish jurisdiction under § 1334(b),

since § 1334(e) does not by itself create jurisdiction to conduct civil proceedings. Therefore, finding no jurisdiction under § 1334(b), the court finds no federal jurisdiction over the Debtor's adversary proceeding.[2]

IV.

The Debtor also argues that the Plan's retention of jurisdiction provision, which purportedly contemplates the Debtor's adversary proceeding for breach of contract and tortious interference, is preclusive, barring the bank from relitigating the bankruptcy court's jurisdiction over the contemplated adversary proceeding. We again disagree.

"A bankruptcy court's order of confirmation is treated as a final judgment with *res judicata* effect," binding the parties by its terms and precluding them "from raising claims or issues that they could have or should have raised before confirmation." *First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough* (*In re Varat Enters., Inc.*), 81 F.3d 1310, 1315 (4th Cir. 1996). With those principles in mind this Court has held that res judicata precluded a Chapter 11 creditor from lodging post-confirmation objections to claims by a debtor's law firm provided for by the confirmed plan. *Id.* at 1315-17. We do not find that these principles and our precedent, however, can be read or extended to preclude the bankruptcy court from exercising its unflagging obligation to examine its subject matter jurisdiction at every stage of the proceedings. Here, the Bank's challenge is not an impermissible collateral attack on the bankruptcy court's subject matter jurisdiction, but rather a permissible direct challenge to its then current exercise of jurisdiction.

---

[2]Citing *Humboldt Express Inc. v. Wise Co.* (*In re Apex Express Corp.*), 190 F.3d 624, 630-33 (4th Cir. 1999), the Debtor also argues that the Bank consented to bankruptcy court jurisdiction by filing a proof of claim with the bankruptcy court. This is of course true in one sense. "[B]y filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58-59 (1989)). However, there still must be jurisdiction over the proceeding under 28 U.S.C. § 1334.

A bankruptcy court "has the authority to pass upon its own jurisdiction and its decree sustaining jurisdiction against attack, while open to direct review, is res judicata in a collateral action." *Chicot Co. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 377 (1940). "The rule applies with equal force to suits in which jurisdiction has been expressly determined and those in which resolution of the jurisdictional question is merely implicit." *Cooper v. Productive Transp. Servs., Inc.* (*In re Bulldog Trucking, Inc.*), 147 F.3d 347, 352 (4th Cir. 1998). But it does not follow that because an order of confirmation is treated as a final judgment for res judicata purposes that the Bank is precluded from challenging the bankruptcy court's jurisdiction over the Debtor's adversary proceeding. Jurisdictionally speaking, the bankruptcy court's confirmation order could resolve only its then current authority to enter a confirmation order. It could not bootstrap future jurisdiction over an unfiled adversary proceeding, as a bankruptcy court always has an obligation to examine its jurisdiction to hear post-confirmation adversary proceedings. *Compare U.S. Home Corp. v. Los Prados Cmty. Assoc.* (*In re U.S.H. Corp. of N.Y.*), 280 B.R. 330, 334-35 (Bankr. S.D.N.Y. 2002) (explaining that a bankruptcy court must always determine that subject matter jurisdiction is proper over an adversary proceeding even if a plan of reorganization provides for retention of jurisdiction), *with Finova Capitol Corp. v. Larson Pharmacy Inc.* (*In re Optical Techs., Inc.*), 425 F.3d 1294, 1306-08 (11th Cir. 2005) (explaining that the bankruptcy court could not collaterally reexamine its subject matter jurisdiction to have entered a confirmation order modifying leases).

## V.

The district court correctly found that the bankruptcy court lacked jurisdiction over the Debtor's adversary proceeding. The district court also decided that the breach of contract claim failed to state a claim upon which relief could be granted and that neither the breach of contract claim nor the tortious interference claim was a "core" proceeding. Without subject matter jurisdiction over the adversary proceeding, however, neither the bankruptcy court nor the district court had jurisdiction to determine these additional issues.[3]

---

[3]Whether a bankruptcy court may exercise subject matter jurisdiction over a proceeding is determined by reference to 28 U.S.C. § 1334. Only

Accordingly, we affirm the district court's decision that the bankruptcy court does not have jurisdiction over the Debtor's adversary proceeding but vacate its additional determinations. We therefore remand to the district court with instructions to dismiss for lack of subject matter jurisdiction.

*AFFIRMED IN PART, VACATED IN PART,
AND REMANDED WITH INSTRUCTIONS*

---

after jurisdiction is established pursuant to § 1334 is resort made to 28 U.S.C. § 157 to determine whether the proceeding is "core" or "non-core." Bankruptcy courts are authorized to enter appropriate judgments and orders in core proceedings, 28 U.S.C. § 157(b)(1), and may enter final orders in non-core related proceedings with the consent of all the parties. 28 U.S.C. §157(c)(2). The determination that a claim is core or non-core is one that should not be reached, however, if subject matter jurisdiction does not exist. *See Abner v. Mate Creek Loading, Inc.* (*In re Mid-Atl. Res. Corp.*), 283 B.R. 176, 186 (S.D.W.Va. 2002) ("[A]n assertion that the action is a core or non-core proceeding is not an allegation of federal jurisdiction; rather, it relates to the power of the bankruptcy court to resolve the issues brought before it after jurisdiction is established.").